# IN THE MATTER OF THE ADOPTION OF INFANT SHERMAN

S. Ct. Civ. No. 2007-044
Supreme Court of the Virgin Islands
June 2, 2008

H. A. CURT OTTO, ESQ., St. Croix, USVI, *Attorney for Appellant.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (June 2, 2008)

This appeal concerns an adoption that took place in 1969. In the instant proceedings, the adoptee's biological mother, L.C.F., ("Appellant") petitioned the trial court, *ex parte,* to unseal the adoption records. Appellant contended that she needed identifying information in the records to contact the adoptee, identified as Infant Sherman. According to Appellant, she desired to "bequeath her estate to her son," and "very much would like the opportunity to meet with her only child." (App. at 5.) Upon weighing the potential harms and benefits to the interested parties and concluding that Appellant did not show good cause for unsealing the records, the trial court denied the petition. Appellant moved for reconsideration, asserting for the first time that the trial court should have appointed a guardian ad litem to ascertain the respective interests of the parties to the adoption before determining whether good cause existed. Appellant also proffered for the first time an affidavit from a psychologist who opined that the trial court's refusal to unseal the adoption records was contrary to a prevailing trend toward greater transparency in adoption proceedings. The trial court denied Appellant's motion for reconsideration, and this appeal ensued. On appeal, we must determine whether the trial court erred in failing to appoint a guardian ad litem and whether the court abused its discretion in denying the motion for reconsideration. For the reasons which follow, the trial court's order will be affirmed.

## I. BACKGROUND AND PROCEDURAL HISTORY

The trial court's determination of whether to unseal Infant Sherman's adoption records was governed by title 16, section 145(c) of the Virgin Islands Code, which provides:

> The original birth record of the adopted child, and all records or files in the custody of any governmental agency or of the court relating to any proceedings under this chapter shall be sealed and thereafter shall not be open to inspection by any person other than the adopted person (if he has attained majority and is not incompetent), except upon the order of the court for good cause shown.

In determining whether good cause existed in this case, the trial court balanced four factors: "(1) the actual or potential interests of the adoptee; (2) the actual or potential interests of the adoptive parent(s); (3) the actual or potential interests of the biological parent(s); and (4) the impact the request would have on the overall purpose, integrity and viability of the adoption system." *In re Adoption of Sherman*, 48 V.I. 221, 225 (V.I. Super. Ct. 2007). In conducting this analysis, the trial court ruled that "[w]here the party is a participant in the proceeding the Court shall consider the *actual* interests represented. Likewise, where the party is absent from the proceeding, the Court will contemplate the *potential* interests of the party and assess the relative risks posed to those interests in considering the request." *Id.* (emphasis in original). Because neither the adoptive parents nor the adoptee were parties to the underlying proceeding, the court only spoke to the respective *potential* interests of these parties. Upon balancing those potential interests, and the actual interests of Appellant, the biological mother, the court concluded that "the life-changing risks that exist substantially outweigh Petitioner's most benevolent intentions. In making this finding, the Court relies heavily upon the fact that Infant Sherman has never appeared here to learn about Petitioner." *Id.* at 232.

In her motion for reconsideration, Appellant did not challenge the trial court's ruling that it would consider the four interests enumerated in the order. Instead, Appellant complained that the trial court did not, *sua sponte,* exercise its equitable powers to appoint a guardian ad litem to investigate the actual interests of the adoptive parents and Infant Sherman, both of whom were absent from the proceedings. In support of this argument, Appellant presented the trial court with academic literature and a psychologist's opinion that were not presented with the original petition. The trial court denied the motion for reconsideration, finding that Appellant sought to

> raise new arguments that were not proffered in her original pleading and accordingly were not discussed in the court's opinion. She claims

that the court's suppositions failed to consider a plethora of academic and psychological data. This data was not part of Petitioner's original pleading and her dissatisfaction with the court's findings does not merit entirely new review of her request.

(App. at 79.)

On appeal, Appellant again asserts that the trial court erred in failing to appoint a guardian ad litem to ascertain whether good cause existed to unseal the adoption records. According to Appellant, under section 145(c), the Legislature left it up to the trial court to fashion a methodology for determining good cause, and the best way to determine the actual interests of absentee parties is to appoint a guardian ad litem. Accordingly, Appellant argues, the trial court in this case erred in failing to appoint a guardian ad litem to discover the actual interests of the absentee adoptive parents and Infant Sherman. In a separately assigned error, Appellant points to academic literature and her psychologist's affidavit and asserts that the trial court erred in failing to appoint a guardian ad litem because "the history of adoption laws is misrepresented by judicial precedent" which warranted change by the court.[1] (Appellant's Br. 2.) Appellant contends that she did not present her expert's affidavit or urge the trial court to appoint a guardian ad litem in her initial petition because the issue of what constitutes "good cause" was a matter of first impression. Thus, Appellant asserts, her motion for reconsideration "was a necessary response to a newly created law." (Appellant's Br. 18.) Likewise, Appellant contends that she had no way of knowing that "the [trial] Court would fail to consider other noninvasive alternatives" such as the appointment of a guardian ad litem. (Appellant's Br. 18.)

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final order of the trial court pursuant to title 4, section 32 of the Virgin Islands Code. Because Appellant's assertion that section 145(c) required the trial court to appoint a guardian ad litem is a legal question, we conduct a plenary review of that assigned

---

[1]    Appellant does not challenge the trial court's use of the four factors enumerated above in determining whether good cause existed to unseal the records. Indeed, Appellant acknowledges that the trial court "properly crafted a law to assist in determining 'good cause shown' under the adoption statutes for unsealing records." (Appellant's Br. 2.)

error. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362-63 (3d Cir. 2007). The trial court's denial of Appellant's motion for reconsideration is generally subject to review for an abuse of discretion, except to the extent that the ruling was based on an interpretation and application of a legal precept, in which case our review is plenary. *Le v. Univ. of Pa.*, 321 F.3d 403, 405-406 (3d Cir. 2003).

## III. DISCUSSION

■ Our starting point in determining whether the trial court erred in failing to appoint a guardian ad litem to facilitate its good cause determination under section 145(c) is the language of the statute itself. This is because in construing a statute, "'[i]f the intent of [the Legislature] is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S. Ct. 2151, 2157, 124 L. Ed. 2d 368 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984)). Section 145(c) does not expressly provide for the appointment of a guardian ad litem in determining whether there is good cause to unseal adoption records. *See* 16 V.I.C. § 145(c). Indeed, had the Legislature intended to provide for the appointment of an intermediary such as a guardian ad litem, as many states have, it could have easily done so in the statutory scheme. *See generally*, Shannon Clark Kief, Annotation, *Restricting Access to Judicial Records of Concluded Adoption Proceedings*, 103 A.L.R.5TH 255 (2002) (noting that 19 states use confidential intermediary services to search for parties and determine whether they consent to the release of information).

■ More importantly, however, it is clear that section 145(c) prohibits the appointment of a guardian ad litem to determine whether there is good cause to unseal adoption records. In this regard, section 145(c) prohibits "any person," except the adoptee, from inspecting sealed adoption records "except upon the order of the court for good cause shown." Clearly, a guardian ad litem is "any person" under the statute, and as such may not inspect adoption records unless good cause is *first* shown. Under these circumstances, a trial court may not, as argued by Appellant, appoint a guardian ad litem for the purpose of determining whether good cause exists. Such an appointment would put the proverbial cart before the horse: unsealing the adoption records before good cause has been shown. Accordingly, we conclude that the trial court did not err in failing to appoint a guardian ad litem to facilitate its good cause determination under title 16, section 145(c) of the Virgin Islands Code.

■ In reaching this conclusion we do not rule that a trial court may never appoint a guardian ad litem to serve as an intermediary where a biological mother seeks to establish contact with the adopted child. Our ruling here is simply that the trial court must make the requisite finding that good cause has been shown to unseal the adoption records *before* an intermediary is permitted to inspect those records. If such an intermediary is to be used in establishing whether the requisite good cause exists to unseal the records in the first instance, as Appellant urges in this case, then the Legislature must act to provide such assistance. That remedy, however, is beyond the purview of the existing legislation.

We next turn to the assertion that the trial court abused its discretion in refusing to appoint a guardian ad litem in response to Appellant's motion for reconsideration. To the extent that Appellant argues that the trial court abused its discretion, on reconsideration, in refusing to appoint a guardian ad litem to facilitate the good cause finding, this argument was addressed and rejected above. Appellant's only other basis for contending that the trial court erred in denying her motion for reconsideration is that "the history of adoption laws is misrepresented by judicial precedent" which warranted change by the trial court. (Appellant's Br. 2.) Appellant presumably believes that these changing attitudes toward greater transparency in adoption proceedings required the trial court to appoint a guardian ad litem in this case.

■ Motions for reconsideration must be based on: "(1) [an] intervening change in controlling law; (2) [the] availability of new evidence, or; (3) the need to correct clear error or prevent manifest injustice." LRCi 7.4.[2] A motion for reconsideration is not a second bite of the apple, but

> is intended to focus the parties on the original pleadings as the "main event," and to prevent parties from filing a second motion with the hindsight of the court's analysis covering issues that should have been raised in the first set of motions. It is not a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have

---

[2] The Local Rules of Civil Procedure of the Virgin Islands are applicable in the Superior Court of the Virgin Island to the extent that the Local Rules are not inconsistent with either procedural rules promulgated under the Virgin Islands Code or the Rules of the Superior Court. *See* Revised Organic Act § 21(c), 48 U.S.C. § 1611(c); Super. Ct. R. 7.

been raised before but were not. In short, Local Rule 7.4 affirms the common understanding that reconsideration is an "extraordinary" remedy not to be sought reflexively or used as a substitute for appeal.

*Bostic v. ATT of the V.I.*, 312 F. Supp. 2d 731, 733, 45 V.I. 553 (D.V.I. 2004); *see also Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 519 n. 12 (3d Cir. 1997) (noting that "'[c]ourts often take a dim view of issues raised for the first time in post-judgment motions'" (citation omitted)); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances . . . [and] may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (emphasis in original, quotation marks and citation omitted)); *Gov't of the V.I. v. Innovative Commc'ns Corp.*, 215 F. Supp. 2d 603, 610 (D.V.I. 2002) ("'[A] motion for reconsideration is not the proper forum for raising new legal arguments or theories which could have been addressed initially, and the court need not address such arguments.'" (citation omitted)).

■ Without belaboring the point, if Appellant wanted the trial court to consider her policy arguments, psychologist's affidavit, and the related literature as evidence of the need of the trial court to appoint a guardian ad litem in response to the changing attitudes toward adoption proceedings, she should have presented that argument and evidence with her original petition. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) ("Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." (citation omitted)); *Kona Enters.*, 229 F.3d at 890; *Innovative*, 215 F. Supp. 2d at 610. She failed to do so. Accordingly, the trial court did not abuse its discretion in refusing to appoint a guardian ad litem based on Appellant's untimely arguments and evidence. *See Pittston*, 124 F.3d at 519 n.12; *Innovative*, 215 F. Supp. 2d at 610. Finally, notwithstanding the merits vel non in Appellant's arguments favoring the appointment of an intermediary to facilitate a trial court's good cause determination, the judiciary is the wrong audience for those arguments. This Court cannot create such a requirement where the Legislature has plainly chosen not to act. *See generally, In re Kaiser Aluminum Corp*, 456 F.3d 328, 346-47 (3d Cir. 2006) ("'[W]e do not sit here as a policy-making or legislative body.' There are no clear answers to the difficult policy issues involved in this

case and, in any event, their resolution is better left to Congress than the courts. We have taken Congress's failure to provide a shred of guidance on how to apply a planby-plan approach as indicative of its intent." (citation omitted)). Appellant's cure lies with the Legislature.

## IV. CONCLUSION

The trial court in this case issued a comprehensive and well-reasoned opinion analyzing the good cause requirement and the basis for its ruling that Appellant had not shown good cause for unsealing Infant Sherman's adoption records. This Court finds no merit in Appellant's arguments that the trial court erred in failing to appoint a guardian ad litem to facilitate the trial court's good cause determination. Likewise, we find no abuse of discretion in the trial court's rejection of Appellant's belated arguments and presentation of evidence in her motion for reconsideration. Accordingly, we will affirm the trial court's judgment.

## CONCURRING OPINION

SWAN, *Justice, concurs.*

## I. INTRODUCTION

L.C.F. ("Appellant"), gave up her son ("Infant Sherman") for adoption. The adoption was finalized by a Virgin Islands court. Several decades later, Appellant motioned the trial court for an order, to unseal her son's adoption records. The trial court denied her request. Subsequently, Appellant filed a motion for the trial court to reconsider its decision. In her motion for reconsideration, Appellant requested for the first time that a guardian ad litem be appointed to ascertain the parties' (Adopted parents' and Infant Sherman's) actual interest in having the adoption records unsealed. After the trial court denied the motion for reconsideration, this timely appeal ensued.

After considering both the record before us and Appellant's arguments, I will affirm the trial court's decision, but for reasons different from those expressed by the majority.

## II. FACTS AND PROCEDURAL HISTORY

In 1969, Appellant gave birth to Infant Sherman. Appellant immediately gave him up for adoption. In 1970, the adoption was finalized in a Virgin Islands court, and the adoption records were ordered

sealed pursuant to law. Appellant also signed official consent documents, relinquishing all her rights to Infant Sherman.

Decades later, Appellant decided to locate her son. Therefore, in 2006, she filed an ex parte motion for adoption information in the Superior Court of the Virgin Islands. Appellant annexed an affidavit to her motion in which she explicated two reasons for seeking the unsealing of Infant Sherman's adoption records. The first reason is that "[i]t is my desire to bequeath my estate [of approximately $800,000.00] to my son, but of necessity, and also because I very much desire to do so, I must ascertain his name and whereabouts." (J.A. at 10.) The second reason is that "I very much want the opportunity to meet with my only child." (*Id.*)

The trial court denied Appellant's motion on February 6, 2007. In its denial of Appellant's motion, the court opined that Appellant did not show "good cause" for the court to unseal the adoption record, as required by law. In a March 5, 2007 order, the trial court denied Appellant's motion to reconsider its decision.

## III. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has jurisdiction over this matter pursuant to title 4, section 32(a) of the Virgin Islands Code, which grants this court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."[1]

Our standard of review of the family court's legal rulings is de novo. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006) ("We review . . . legal rulings *de novo*."). "*De novo* means that the court's inquiry is not limited to or constricted by the record nor is any deference due the conclusions under review." *Phillips v. County of Allegheny*, 515 F.3d 224, 230 n.2 (3d Cir. 2008) (brackets and ellipses omitted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000)). "This Court's standard and scope of review of an appeal from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge." *Jones v. Lang*, 591 A.2d 185,

---

[1]    V.I. CODE ANN. tit. 4, § 32(a).

186-87 (Del. 1991) (quoting *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983)). "If the trial court has correctly applied the law, our standard of review is for abuse of discretion." *Jones*, 591 A.2d at 186-87.

Our review of a denial of a motion for reconsideration "is plenary where the denial was based on 'the interpretation and application of a legal precept.'" *United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006) (quoting *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985)). "Otherwise, we review such denials for abuse of discretion." *Id.*

## B. Issues Presented

The main issue is whether a biological mother's desire to locate her only child, who was lawfully adopted decades earlier by another family, in order for the mother to meet her biological child and to bequeath her entire estate to the child constitute "good cause shown" to unseal the adoption records which are statutorily mandated and court-ordered to be sealed.[2] The second issue is whether Appellant has provided the trial court with facts constituting a "good cause" exception to justify the trial court appointing a guardian ad litem to ascertain the parties' actual interest in having the adoption records unsealed.

Appellant presented two reasons as justifications for unsealing the court's records. In the analysis part of this opinion, I will address both reasons in detail. First, Appellant wishes to bequeath her entire estate to her son. I conclude that this purpose does not constitute a "good cause" exception. Second, Appellant desires to meet with her only child. Usually, parents desire to meet their children; therefore, Appellant's desire is not uncommon. Importantly, the desire to meet her only child does not constitute "good cause shown." Consequently, the trial court did not err in denying the appointment of a guardian ad litem to ascertain the parties' actual interest in having the adoption records unsealed. Appellant also questions "whether the history of adoption laws is misrepresented by

---

[2]    The "Statement of the Issues" section of Appellant's brief states as follows:

1.    Whether, in a case of first impression, where the Superior Court properly crafted a law to assist in determining "good cause shown" under the adoption statutes for unsealing records, the Superior Court should have appointed a guardian ad litem to ascertain the parties['] actual interests, rather than presupposing imagined interests antithetical to present day mores.

2.    Whether the history of adoption laws is misrepresented by precedent further warranting change.

judicial precedent to justify change." (Appellant's Br. at 2.) However, the language of our adoption statute is unambiguous. Accordingly, there is no need to extensively review judicial precedents interpreting adoption laws. Moreover, it is solely the province of the legislature, and not the court's province, to change adoption laws.

I now proceed to explain how I reached these conclusions. I commence my discussion with the clear statutory background of adoption laws, and then emphasize the limited reading that an exemption clause within an adoption statute must be accorded. After reviewing the structure of our adoption statutes, I note that Appellant's request raises issues which are cognizable under our adoption statutes. I expound on how Appellant's requests conflict with our adoption statute's plain language, and why "good cause" has not been "shown" in this case. Thereafter, I further explain why the appointment of a guardian ad litem to review the adoption record and identify Infant Sherman, which is proscribed by statute, is unnecessary. Continuing, I evaluate Appellant's request for the appointment of a guardian ad litem and conclude that the trial court's denial of Appellant's motion for reconsideration is not an abuse of discretion. Finally, I reject Appellant's unfounded claim that the history of adoption laws is misrepresented by judicial precedent. Therefore, I affirm the decisions of the trial court.

## IV. ANALYSIS

### A. Background of Adoption Laws

Adoption is not part of our common law tradition. *See, e.g., In re Wheatley's Estate*, 4 V.I. 72, 74, 174 F. Supp. 868, 869 (D.V.I. 1959). In the former colonies of Great Britain, such as the United States of America and in its territories, adoptions are consummated pursuant to local statutes. *See, e.g., Ex parte D.W.*, 835 So. 2d 186, 190 (Ala. 2002); *In re Adoption of Kailynn D.*, 273 Neb. 849, 733 N.W.2d 856, 858 (2007) ("the matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed."); *Hede v. Gilstrap*, 2005 WY 24, 107 P.3d 158, 166 (2005) ("the only universal lesson to be learned from these cases is that . . . adoption . . . [is a] purely statutory creature[] and, as such, limits are to be found within the statutes."); *Sharon S. v. Superior Court*, 31 Cal. 4th 417, 2 Cal. Rptr. 3d 699, 73 P.3d 554, 559 (2003) ("The right to adopt a child, and the right of a person to be adopted

as the child of another, are wholly statutory.") (internal quotation omitted). The Virgin Islands' adoption statute is codified in title 16, sections 141 through 147 of the Virgin Islands Code.

"The usual rules of statutory construction apply to adoption statutes." 3A N. Singer, *Sutherland on Statutes and Statutory Construction* § 69:4 (rev. 6th ed. 2003 & Supp. 2007); *see also*, 2 AM. JUR. 2D *Adoption* § 13 (1994). Additionally, because adoption in the Virgin Islands is a creature of statute, we are obliged to apply the rules of statutory interpretation when confronted with adoption issues.

Because adoption statutes are a departure from the common law, they are strictly construed. *Paiewonsky v. Paiewonsky*, 446 F.2d 178, 180, 8 V.I. 421 (3d Cir. 1971) ("We are . . . guided by the familiar principle of statutory construction that statutes in derogation of the common law are to be given a strict construction"). *Norfolk Redev. & Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35, 104 S. Ct. 304, 78 L. Ed. 2d 29 (1983) ("It is a well-established principle of statutory construction that 'the common law ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'") (ellipses and alterations omitted) (quoting *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. (7 Cranch) 603, 623, 3 L. Ed. 453 (1812)). *See Badaracco v. Comm'r*, 464 U.S. 386, 403 n.3, 104 S. Ct. 756, 78 L. Ed. 2d 549 (1984) (Stevens J., dissenting) ("It is axiomatic that statutes in derogation of the common law should be narrowly construed.") Importantly, when reviewing a statute, each statutory provision should be read by reference to the whole statute. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2170, 167 L. Ed. 2d 982 (2007) ("we must give effect to the statute as enacted") (internal quotations omitted); *Gonzalez v. Oregon*, 546 U.S. 243, 273, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006); *see also In re Adams*, 189 Mich. App. 540, 473 N.W. 2d 712, 714 (1991) ("the provisions of the Adoption Code must be construed together as a whole."). Similarly, "the statute should be interpreted to give consistent, harmonious and sensible effect to all its parts." 3A N. Singer, *Sutherland on Statutes and Statutory Construction, supra.* In addition to reading the provisions of a statute as a whole, "[t]he words and phrases of the statute should be given effect according to their plain and ordinary meaning." *Id.*

Additionally, "[w]hen construing the terms of a statute, a court begins with its plain language." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d

965, 969 (8th Cir. 2007). In *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992), the United States Supreme Court emphatically states that: "in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." The United States Supreme Court continues: "[w]hen the words of a statute are unambiguous, then, the first canon is also the last: judicial inquiry is complete." *Id.* (internal citations and quotations omitted). *See also*, *Gonzales v. Carhart*, 127 S. Ct. 1610, 1630, 167 L. Ed. 2d 480 (2007) ("In interpreting statutory texts courts use the ordinary meaning of terms unless context requires a different result.").

I am cognizant that when interpreting a statute, explicit exemptions or exceptions are narrowly interpreted. *See Knight v. Comm'r*, 128 S. Ct. 782, 789, 169 L. Ed. 2d 652 (2008) (expressing the United States Supreme Court's "inclination 'in construing provisions in which a general statement of policy is qualified by an exception, to read the exception narrowly in order to preserve the primary operation of the provision.'") (quoting *Comm'r v. Clark*, 489 U.S. 726, 739, 109 S. Ct. 1455, 103 L. Ed. 2d 753 (1989)).

Also, courts must interpret adoption statutes to protect the interest of the adopted child. *See, e.g., In re Adoption of M.A.*, 2007 ME 123, 930 A.2d 1088, 1096 (2007) ("'We construe our adoption statutes to protect the rights and privileges of the child being adopted.'") (quoting *Dep't of Human Servs. v. Sabattus*, 683 A.2d 170, 172 (Me. 1996)).

Adoption statutes also regulate access to adoption records. *See generally*, Shannon Clark Kief, Annotation, *Restricting Access to Judicial Records of Concluded Adoption Proceedings*, 103 A.L.R.5TH 255 (2002). Title 16, section 145 of the Virgin Islands Code governs access to our adoption records.

## B. The Structure of Virgin Islands Adoption Law

To address the issues posited by Appellant, we must review the pertinent adoption laws of the Virgin Islands, including the provisions affecting disclosure of adoptees' sealed records. Section 145(a) enunciates the factors a court must consider before issuing a decree of adoption. It provides:

(a) If, upon such petition so presented and consented, it appears that the child has resided with the petitioner for a length of time sufficient to indicate that the proposed adoption is in the best interest of the child, and the Commissioner of Public Welfare has submitted his report and recommendation with respect to the proposed adoption, and the court is satisfied of the identity and relations of the persons, and that the petitioner is of sufficient ability and in all respects a proper person to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption should take effect, a decree shall be made setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner.

Therefore, it is obvious that upon the issuance of a decree of adoption "the [adopted] child shall, to all legal intents and purposes, be the child of the petitioner." § 145(a). Essentially, the natural relationship between natural parents and child is forever abrogated. Consistent with the terminated relationship between natural parents and adoptee, section 145(b) provides for an adoptee's change of name if requested at adoption, when the adoptee becomes a member of a new family. Section 145(b) states:

(b) If a change of the child's name is requested in the petition for adoption, the court, upon adjudging the adoption, may also adjudge such change of name and grant a certificate thereof without further notice and a copy thereof shall be furnished by the clerk of the court to the proper local registrar of vital statistics.

When an adoption occurs, and in order to protect the new family unit of adopted parents and adoptee, title 16, section 145(c), disallows general access to adoption records. This section states:

(c) The original birth record of the adopted child, and all records or files in the custody of any governmental agency or of the court relating to any proceedings under this chapter shall be sealed and thereafter shall not be open to inspection by any person other than the adopted person (if he has attained majority and is not incompetent), except upon the order of the court for good cause shown.

Undeniably, the totality of section 145's subsections (a), (b), and (c) inexorably bolsters and supports the new family relationship between the

adopted parents and the adoptee. For example, subsection (b) provides that the adoptee may take the new parents' surname, and subsection (c) limits access to records of the adoption proceeding, thereby protecting the adoptee's former identity. Our adoption statute further solidifies and legitimizes the new relationship between adopted parents and adoptee, by confirming an adoptee's right to inherit from the adopted parents. Section 146 (a) provides that:

> (a) A child adopted under the provisions of this chapter is deemed, for the purpose of inheritance and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he is not capable of taking property expressly limited to heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.

I agree with the trial court's pronouncement that section 146's "language could not be clearer." (J. A. at 23.) Sections 145 and 146 must be read together. When read together, the obvious objectives of sections 145 and 146 are to truncate the adoptee's prior relationship with the natural parents, to forever seal all remnants of that prior relationship, and to permit the adoptee to assimilate into the new family. Concomitantly, the provisions in Section 145 provide a structure of privacy and confidentiality to the adoptee, to the adopted parents, and to the natural parents. Privacy and confidentiality are cornerstones of the adoption process and will undoubtedly contribute to the overall success of the adoption. Section 145(c)'s language, "except upon the order of the court for good cause shown" is unmistakably an exception to the general rule which allows for unsealing of the adoption records. Exceptions in statutes are narrowly construed so as not to render other provisions of the same statute superfluous or unnecessary. *See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."); *Knight*, 128 S. Ct. at 789 (2008) (to "'render part of the statute entirely superfluous, [is] something we are loath to do'") (quoting *Cooper Indus., Inc. v. Aviall Serv., Inc.*, 543 U.S. 157, 166, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004)).

Appellant importunes us to utilize the "good cause shown" exception provision of section 145(c) to effectuate her intention to leave her entire estate to Infant Sherman. I decline. Section 146 specifically mandates that upon adoption, the adoptee becomes the lawful heir of the adopted parents. Section 146 provides specifically that "a child," such as Infant Sherman, "adopted under the provisions of this chapter is deemed, for the purpose of inheritance . . . the child of the parents by adoption . . . ." With these words, the legislature specifically consigned the natural relations between child and parent to Infant Sherman's adoptive parents, "as if he had been born to them in lawful wedlock." 16 V.I.C. § 146(a). The adoption statute's inheritance provision is uncontroverted. Moreover, it is obvious that Infant Sherman's adoption was finalized without any legal infirmity and none has been raised by Appellant. Therefore, this Court is compelled to give effect to the clear intent of Section 146.

The Legislature of the Virgin Islands ("Legislature") could have provided for an alternative manner or other options for specifically allowing an adopted child to automatically inherit from the natural parents; however, the Legislature eschewed any attempt to do so. In other jurisdictions where the legislature intended for an adoptee to inherit from natural parents, the legislature has so provided. *See In re Estate of Van Der Veen*, 262 Kan. 211, 935 P.2d 1042, 1044 (1997) ("the legislature intended that [Kansas statute] 59-2118(b) . . . permitted an adoptee to inherit from and through his or her biological parents"); *In re Estate of Johnson*, 18 Misc. 3d 898, 850 N.Y.S.2d 855, 857 (N.Y. Sur. 2008) ("statutory provision . . . restored the right of an adopted person to inherit from biological parents under limited circumstances."). *See also Sluder v. Marple*, 134 S.W.3d 15, 16 (Ky. Ct. App. 2003) (where the legislature did not so provide, "[i]ndeed, it is well established that in Kentucky, adopted children may not inherit from their biological parents."); *In re Estate of McQuesten*, 133 N.H. 420, 578 A.2d 335, 338 (1990) ("While an adopted child may lose rights of inheritance from natural parents, he or she gains rights of inheritance from adoptive parents.").

Unquestionably, Appellant is Infant Sherman's natural mother. Therefore, under the applicable inheritance statute of the Virgin Islands, Appellant is in the category of a natural parent, from whom Infant Sherman does not automatically inherit. Appellant's generosity towards her son is praiseworthy and commendable. Nonetheless, Appellant's request to unseal the adoption record for the purpose of making Infant

Sherman her heir is impeded by the plain language of title 16, sections 145(c) and 146. *Cf. In re Wheatley's Estate*, 174 F. Supp. at 871 ("it necessarily follows that children of an adopted child are descendants of the adoptive parents by force of the statute.").

I conclude that because our adoption statutes expressly provide for adoptees to inherit from their adopted parents, and is conspicuously silent on whether adoptees can automatically inherit from their natural parents, Appellant's intention to bequeath her estate to Infant Sherman does not constitute "good cause shown" to unseal the adoption records for the sole purpose of allowing Appellant to include and to identify Infant Sherman among her heirs.

I further conclude that Section 146 is an unequivocal attempt to terminate the relationship between natural parents and adoptee. The viewpoint that our adoption laws support a terminated relation between the natural parent and the adoptee is buttressed by Section 145(c)'s categorical and general intention of prohibiting all persons, except the adoptee, from accessing adoption records, that could reveal the identity of both the natural parents and adoptees which can result in contact between the natural parents and the adoptee.

## C. Statute's Plain Language Bars Appellant's Requests

Appellant advanced two major reasons for imploring the trial court to unseal Infant Sherman's adoption records. Both reasons are unpersuasive, because of the plain language in the general provisions of sections 145 and 146, which must be read together. *See, e.g., Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2170, 167 L. Ed. 2d 982 (2007).

Before this Court can assist Appellant by unsealing Infant Sherman's adoption records, her request must comport with the "good cause shown" statutory exception and other relevant provisions of our statutes. In interpreting a statute, the court looks first to the statute's plain meaning and, if statutory language is facially unambiguous, its inquiry comes to an end." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1199 (11th Cir. 2007).

In this case, the trial court found that the language of our adoption statute "could not be clearer." Therefore, the trial court was required to give effect to the explicit statutory language as required by the canons of statutory interpretation. When the plain meaning rule of statutory

interpretation is applied to the language in our adoption statute, particularly title 16, sections 145(a), (b), and (c) and 146 collectively, the unavoidable conclusion is that Appellant's desire to leave her estate to her only child does not constitute good cause shown to unseal the adoption records.

As mentioned earlier, Appellant's second reason for seeking to unseal Infant Sherman's adoption record is her desire to meet her child. Another court has observed that this type of sentiment is "shared by many natural mothers who have relinquished a child for adoption." *In re Christine*, 121 R.I. 203, 397 A.2d 511, 513 (1979). The desire to see one's natural child is an "incident[] of the natural relation of [a] parent[] and child[]." 16 V.I.C. § 146(a). Therefore, Appellant's desire to meet her only child is among the "*incidents of the natural relation of parents and children*" stated in Section 146(a), which terminates when an adoption decree is issued by the court. "To equate [a natural mother's] desires [to meet her child] with good cause will unquestionably precipitate an influx of petitions filed by natural mothers desirous of seeing children who are becoming [or have already become] integrated within other family units." *Christine*, 397 A.2d at 513. Moreover, Appellant's desire undermines the 'good cause shown' exception to sealing adoption records and is contrary to the two sacrosanct adoption principles of privacy and confidentiality owed to the adoptee and the adopted parents. Additionally, section 145(b) is unmistakably clear that after a decree of adoption is issued, "natural parents are deprived . . . of all legal rights as respects the child . . . ." Likewise, natural parents have no legal obligation or duty to the adoptee after the adoption. Therefore, I agree with the trial court that Appellant's "statement of human desire to meet her son is insufficient as good cause." (J.A. at 22.)

More succinctly, our adoption statute divests biological parents of parental rights and responsibilities toward their children and conveys those rights and responsibilities to the adoptive parents. *See, e.g., Estate of Wheatley*, 4 V.I. at 77, 174 F. Supp. at 871. Therefore, Appellant's second reason, her desire to meet her only child, which entails our unsealing Infant Sherman's adoption records in order to reveal his present identity, is precluded by the forthright language of section 145(c). Appellant is reminded that section 145(b)'s change of name provision demonstrates our legislature's sentiment that an adoptee not be identified with the adoptee's natural parents. For the above reasons, Appellant's

request to unseal the adoption records in order to meet her son, in the absence of "good cause shown," would violate the tenets of our adoption laws.

## D. Appellant Did Not Show "Good Cause" for Unsealing Adoption Records

Appellant invites us to utilize the "good cause shown" provision in our statute and make a radical departure from the Legislature's statutory mandate. I decline. Good cause for unsealing adoption records mandates extraordinary circumstances before litigants can avail themselves of the provision. *Cf. In re Adoption of S.J.D.*, 641 N.W.2d 794, 801 (Iowa 2002) (for adoptee seeking identifying information, "good cause . . . should include no less than a showing of a medical need to save the life of or prevent irreparable physical or mental harm to an adult adopted person requesting the identifying information."). The purpose of

> The "good cause" provision has been described as "an escape valve from the generally impenetrable nature of adoption records [that] permits individual judicial treatment where circumstances and justice so require." *Application of Hayden*, 106 Misc.2d 849, 435 N.Y.S.2d 541, 542 (N.Y. Sup. Ct. 1981). The legislature has determined that this escape valve is to be used in "situations where the stringent confidentiality requirements may lead to harmful and untenuous results in a particular case." *Id.* . . . To establish good cause, the [Applicant] must show a compelling need for the identifying information. *Bradey v. Children's Bureau of South Carolina*, 275 S.C. 622, 274 S.E.2d 418, 421 (1981). And what constitutes a compelling need depends upon the circumstances of each case. *Id.*

*In re Adoption of S.J.D.*, 641 N.W.2d at 799-800.

I agree that a showing of "good cause" depends on the individual circumstances in each case and that usually "good cause" would involve prevention of harm or a compelling need. It is evident that "good cause" may be shown only in those instances where the rights of the litigants have not been specifically limited by the Legislature. If natural parents who desire to bestow or impart any property to their natural children, who are currently adopted by other families, are routinely allowed to have the adoption record for their natural children unsealed, in the absence of good

470

cause shown, which requires the presence of extraordinary circumstances, the "good cause shown" statutory exception would become a nullity. *See Comm'r v. Clark*, 489 U.S. 726, 739, 109 S. Ct. 1455, 103 L. Ed. 2d 753 (1989) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people") (quoting *Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945)).

Presented with the same issues raised by Appellant and under a sealing statute largely similar to ours, the Superior Court of New Jersey, Chancery Division, decided that a mother's desire to see her child and to possibly leave property for the child, do not constitute good cause within the applicable New Jersey statute.[3] In the case of *In re Adoption of Baby S.*, 308 N.J. Super. 207, 705 A.2d 822 (1997), a biological mother petitioned the New Jersey court to unseal records of her child's adoption formalized in 1940, after the biological mother consented to the adoption. After fifty-six (56) years, which would have been the age of the adoptee, the natural mother petitioned the New Jersey court to "obtain identifying information about the adoptee and his adoptive family." 705 A.2d at 823. At seventy-five years old, the natural mother sought "to identify and locate the adoptee, speak to him, tell him she is his biological mother, and perhaps leave her estate to him in her will." *Id.*

The court denied the natural mother's petition stating that: "[t]he desire of the petitioner-biological mother to now see the son she surrendered for adoption so long ago, and perhaps leave him with some monetary bequest, does not equate with good cause." *In re Adoption of Baby S.*, 705 A.2d at 825. The court noted that the adoptee has developed fully and may not know he was adopted. *Id.* The court expounded further that the adoptee had not sought to locate his biological parents, and there was no evidence he desires to meet or speak with them. *Id.* The court explained that "[t]he legislative purpose for the sealing of adoption records is to

---

[3]    N.J. STAT. ANN. § 9:3-52 (West 2002). This provision, which bars everybody from adoption records, including the adopted child, states in relevant part that:

> a. All records of proceedings relating to adoption, including the complaint, judgment and all petitions, affidavits, testimony, reports, briefs, orders and other relevant documents, shall be filed under seal by the clerk of the court and shall at no time be open to inspection or copying unless the court, upon good cause shown, shall otherwise order.

provide adoptees, their adoptive parents and their biological parents with a right to privacy and confidentiality." *Id.* at 823. The court concluded that it was desirable that New Jersey's statute sealing adoption records was effective in preserving this adoptee's privacy for over half a century, allowing him to bloom and grow. *Id.*

I do not foreclose a future possibility in which circumstances could exist whereby a natural parent's desire to leave a substantial amount of money to a natural child who has been adopted, together with other factors, could involve extenuating circumstances or circumstances vastly different from the facts of this case and may constitute "good cause shown." In such instances, each case would be evaluated on its merits to determine whether "good cause shown" exists to unseal the adoption records.

### E. An Interpretive Framework for Determining "Good Cause Shown" is Unnecessary because of the Statute's Plain Language

The trial court created an interpretive scheme for finding good cause. The trial court held that:

> [h]aving carefully studied the existing case law on the matter at bar, this court now holds that a finding of "good cause," for the purposes of 16 V.I. CODE ANN. § 145(c) results *primarily* from the balancing of four factors: (1) the actual or potential interest of the adoptee; (2) the actual or potential interests of the adoptive parent(s); (3) the actual or potential interests of the biological parents(s); and (4) the impact the request would have on the overall purpose, integrity and viability of the adoption system.

(J.A. at 16.)

While there may be instances in which it may be useful to employ the foregoing analytical framework, I conclude that it is not necessary in this case. Appellant's request to unseal the adoption records already has been resolved by statute. Rules of statutory construction require us to read sections 145 and 146 together and to construe "good cause shown" narrowly. *See, e.g., Babbit v. Sweet Home Chapter of Cmtys for a Greater Or.,* 515 U.S. 687, 115 S. Ct. 2407, 132 L. Ed. 2d 597 (1995). Significantly, "good cause" cannot exist in contravention of a statute where the legislature has properly defined the rights of the parties. In this

case, the legislature has prescribed only one statutory avenue for Infant Sherman to automatically inherit, which is through his adopted parents.

In addressing the above four factors elucidated by the trial court for determining whether "good cause," has been "shown," I find, like the trial court, that Appellant's arguments fail. First, other than the possibility of an inheritance, the adoptee has no interest in this case. From the record before the court, the adoptee has made no effort to have the adoption records unsealed in order to ascertain the identity of his natural parents, even though he has the right to have the records unsealed. *See* § 145. Second, Appellant has failed to present any modicum of credible evidence that the adoptive parents have an interest or potential interest in this case. Third, Appellant's potential interest has been significantly diminished by the statutory language of section 145(a). Since Infant Sherman's adoption has been completed, Appellant has no legal obligation to Infant Sherman, and Infant Sherman likewise has no legal obligation to Appellant. Fourth, Appellant's request to unseal the records in the absence of compelling or extenuating circumstances would threaten the purpose, integrity and reliability of our adoption system and its statutory laws.

Additionally, this Territory has a compelling interest in protecting the adoptive family relationship it has statutorily created, and this interest can be promoted by keeping the adoption process confidential. Lastly, the "good cause shown" statutory exception should only be invoked or be utilized in extraordinary or extenuating circumstances, such as medical emergencies or other life threatening situations, which are absent in this case. "Good cause shown" certainly should not be invoked at the behest of a person whose rights have been terminated by the adoption process.

## F. Appointment of a Guardian Ad Litem is Unnecessary

Appellant also argues that the trial should have appointed a guardian ad litem to investigate whether circumstances exist to unseal Infant Sherman's adoption records and to investigate Infant Sherman's and the adoptive parents' receptivity to unsealing the adoption record. Because I concluded that "good cause shown" does not exist in this case, I find no cogent reason for the appointment of a guardian ad litem upon the basis urged by Appellant for such appointment. Moreover, granting access to Infant Sherman's adoption records to a guardian ad litem is incongruous with the provisions of Section 145(c) which expressly instructs that "all records . . . shall be sealed and thereafter shall not be open to inspection

by any person other than the adopted person . . . ." I underscore that upon entry of an adoption decree, "the natural parents are deprived of all legal rights as respects the child." 16 V.I.C. § 146(b).[4]

Additionally, the appointment of a guardian ad litem, except when "good cause shown" exists, is inconsistent with the legislative command, also expressed in the adoption papers Appellant signed at the time of the adoption, that the adoptee's identity and records of adoption remain confidential. Therefore, appointing a guardian ad litem to conduct an investigation, as proposed by Appellant, could have a chilling effect on future adoptions. Moreover, it would "cast[] a cloud of uncertainty upon the minds of all adoptive parents who now realize that some day a court attache may be at their door step acting as a courier for a parent whose right to visit or talk to the adoptive couple's child was supposedly terminated." *In re Christine*, 397 A.2d at 513-14. The Supreme Court of Rhode Island held *In re Christine*, that a natural mother's desire to contact her elevenyear-old child's adoptive parents with the hope of seeing the child did not constitute "good cause" for unsealing the record of an adoption. *Id.* at 512.

During the final weeks of her pregnancy, Christine (single and a minor at the time) and her father gave their written consent to an adoption. *Id.* Christine parted ways with her baby at the maternity ward eleven years before her petition. *Id.* During this time she contacted the family court and the adoption agency asking that she be given an opportunity to visit the child. *Id.* The family court authorized a guardian ad litem to identify the adoptive parents of Christine's daughter. *Id.* The trial court's order authorized the guardian ad litem to contact the adoptive parents and determine if they have any objections to Christine making contact with the child. *Id.*

The Supreme Court of Rhode Island reversed the trial court and held that Christine's desire to contact her 11-year-old child's adoptive parents with the hope of seeing the child does not constitute "good cause" for unsealing the record of an adoption. *Id.* at 207. Remarkably, the trial court that was reversed by the *In re Christine* appellate court considered its "order as a proper balancing of the respective interests of the three real

---

[4] 16 V.I.C. § 146(b) provides that: "[t]he natural parents of such child are deprived by a decree under section 145 of this title of all legal rights as respects the child, and the child is freed from all obligations of maintenance and obedience as respects his natural parents."

parties to an adoption proceeding; namely, the natural mother, the adoptive parents, and the child." *Id.* at 512.

The Supreme Court of Rhode Island rejected the trial court's balancing of factors and recognized that granting access of a child's adoption records to a natural parent "is completely at odds with the legislative directive which states that, upon entry of an adoption decree, the natural parents shall be deprived of all legal rights respecting the child." *Id.* at 513 (internal quotation and ellipses omitted). Next, the court concluded that opening Christine's child's records would impinge upon provisions of law to keep adoptions confidential and, thus, sealed. *Id.* The court also noted the detrimental effect laws unsealing adoption records would have upon the institution of adoption itself. *Id.*

Not surprisingly, no Virgin Islands statute or case law precedent remotely suggests or remotely provides for appointment of a guardian ad litem to explore whether the adoptee and natural parents should contact each other. The plausible reason for the absence of such a statutory provision is that the appointment of a guardian for the purpose proposed by Appellant is contrary to the intent and purpose of our adoption statute and the entire Territorial adoption system. The routine appointment of a guardian ad litem serves no purpose other than to circumvent the local adoption laws. Importantly, pursuant to title 16, section 145 of the Virgin Islands Code, if the trial court finds instances in a case where a "good cause shown" exception in our adoption statute exists to justify unsealing the adoption records, the trial court could then proceed to employ the assistance of a guardian ad litem to ascertain the parties' actual interest in having the adoption records unsealed. I emphasize that there must first exist in a case the "good cause shown" statutory exception, before the trial court may consider appointing a guardian ad litem in furtherance thereof. Lastly, the routine appointment of a guardian ad litem for the purposes asserted by Appellant would constitute judicial legislating.

I review the trial court's denial of a motion for reconsideration for abuse of discretion. Appellant did not request the appointment of a guardian ad litem in her initial court filings. However, after her motion was denied, Appellant argued that the trial court should have appointed a guardian ad litem. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). It is not a vehicle for "raising arguments that could have been raised before

and were not." *Bostic v. AT&T of V.I.*, 312 F. Supp. 2d 731, 733, 45 V.I. 553 (D.V.I. 2004). It is undeniable that Appellant had sufficient time to include a request for the appointment of guardian ad litem in her initial motion before the trial court. She did not. Therefore, the trial court did not abuse its discretion by denying Appellant's motion for reconsideration.

Appellant annexed the affidavit of a psychologist, Dr. Wayne Etheridge, to her motion for reconsideration. Dr. Etheridge did not interview Baby Sherman. However, he states that "95% of adoptees express a desire to be found by their birth parents." (J.A. at 34.) Etheridge further avers that times and attitudes have changed in adoption, that adoptees need not be protected from knowledge of birth parents, and that adoption laws should eschew secrecy and embrace openness called "cooperative or open adoption." (J. A. at 34-36.) Dr. Etheridge's affidavit and its apparatus of appendices are not helpful. For example, the Virgin Islands adoption records provision permits an adoptee of suitable age and discretion, seeking to contact the adoptee's natural parents, to conduct an inspection of the records of the adoptee's adoption proceedings. 16 V.I.C. § 145(c). Obviously, the law reposes in Infant Sherman the choice of contacting his birth mother. Therefore, Dr. Etheridge's claim that ninety-five percent (95%) of adoptees desire to be found by their birth parents cannot assist the trial court in determining whether Infant Sherman wants to be found. *See* Sarah Ramsey and Robert F. Kelly, *Assessing Social Science Studies: Eleven Tips for Judges and Lawyers,* 40 FAM. L.Q. 367, 374-375 (2006) ("It is important to understand that a study of a group of individuals, whether a sample or a population, cannot be applied directly to an individual in a legal case as if it were a clinical assessment of that individual.").

In further support of her case, Appellant annexed two law review articles namely, *Because They Want to Know: An Examination of the Legal Rights of Adoptees and Their Parents* by Heidi Hildebrand[5] and *The Sealed Adoption Records Controversy: Breaking Down the Walls of Secrecy* by Jason Kuhns.[6] Remarkably, both articles recognize that some adoptees do not want to be contacted by their birth parents. Kuhns, *supra* at 274 ("some adoptees may have an apparent disinterest in seeking

---

[5]  24 S. ILL. U. L. J. 515 (2000).
[6]  24 GOLDEN GATE U. L. REV. 259 (1994).

knowledge about or contact with their biological parents"); Hildebrand, *supra* at 530 ("not all adoptees would welcome contact by their birth parents. As one adoptee explained: 'I, for one, would highly resent the intrusion by my biological parents into my present life, for they mean absolutely nothing to me. . . .'"). Because the affidavit and its supporting documents are not useful, I conclude that the trial court properly denied the motion for reconsideration. Accordingly, I further conclude that upon the facts of this case, the Superior Court did not abuse its discretion in denying Appellant's motion for reconsideration.

Next, Appellant invites this Court to join a sociological disquisition and to launch an inquiry entitled "[w]hether the history of adoption laws is misrepresented by judicial precedent, further warranting change." (Appellant's Br. 2.) Appellant asserts that the trial court should have appointed a guardian ad litem to implement procedures for a more general access to adoption records. I respectfully decline, because the Legislature, not this Court, is the appropriate forum for amending Virgin Islands' adoption laws to provide for greater access to adoption records.

## V. CONCLUSION

Appellant's request to unseal the adoption records of her natural child, which is statutorily mandated to be sealed and was court ordered to be sealed, in order that she can meet her only child and bequeath her entire estate to him, does not constitute "good cause shown" to warrant unsealing the records of the adoption proceedings. I also conclude that the trial court did not abuse its discretion in denying Appellant's motion to appoint a guardian ad litem and in denying her motion for reconsideration.

Therefore, I **AFFIRM** the decision of the Superior Court of the Virgin Islands.