OPINION OF THE COURT
Lawrence E. Kahn, J.
In this proceeding petitioner seeks access to the records of her adoption pursuant to section 114 of the Domestic Relations Law. The statute provides that no person shall be allowed access to such records “except on good cause shown and on due notice to the adoptive parents and to such *850 additional persons as the court may direct.” Petitioner’s adoptive father is deceased and her adoptive mother has consented to the relief sought. The court has appointed a guardian ad litem to represent the interests of petitioner’s natural parents, both to satisfy due process and to insure their continued anonymity. (Matter of Anonymous, 89 Misc 2d 132.)
The constitutionality of section 114 has been most recently reviewed by the Federal courts in Alma Soc. v Mellon (601 F2d 1225 [1979]). The court held that providing for the release of information in adoption records on a showing of good cause does not arbitrarily remove an adult adoptee’s rights of identity, privacy or personhood in violation of due process. (Alma Soc. v Mellon, supra, p 1233.) The “good cause” provision of section 114 allows an escape valve from the generally impenetrable nature of adoption records and permits individual judicial treatment where circumstances and justice so require. A legislative scheme has thus been created to be utilized in situations where the stringent confidentiality requirements may lead to harmful and untenuous results in a particular case. Accordingly, upon an appropriate showing of psychological trauma or medical need, New York courts may grant permission to release all or part of the sealed adoption records. (Alma Soc. v Mellon, supra.)
Confidentiality has been and continues to be vital to the adoption process. Section 114 of the Domestic Relations Law recognizes a need for secrecy in adoption proceedings for the purpose of fostering a stable, secure home life for the adoptive child. This section is clearly concerned with the right of the natural parents, after surrendering a child, to be able to start a new life without an apprehension that the past may come back to plague them. The statute also reflects the rights of the adoptive parents to raise their own child without apprehension that the past will arise to plague them. While cognizant of the rights of both the natural and adoptive parents, section 114 and its provision for sealing the record is not primarily concerned with the right of the adoptive child to know her own biological identity. “It must be remembered that the legislative purpose for the confidentiality of adoption records is inextricably inter *851 twined with the Legislature’s broader sociological plan to provide a child with a substitute family through the adoption process.” (Matter of Anonymous, 92 Misc 2d 224, 225.) The process of adoption is now viewed in a different light than it was when this law was enacted. And while changed attitudes may warrant a new look at the purpose and effect of this law by the Legislature, it is not the function of a court to redraft or to interpret laws differently than intended solely to reflect current values or lifestyles. It is best left to the Legislature to distinguish the changing mores from shifting moods of society.
On the return day of this proceeding the court-appointed guardian ad litem, representing the unknown natural parents, moved for an order granting him access to the adoption records to allow him to determine the names of the natural parents for the purpose of ascertaining their whereabouts. He proposes to contact them to advise them of their rights in this proceeding and for the further purpose of ascertaining their wishes. The guardian, who is serving without fee, has strongly urged the court to adopt this procedure in order that he may determine whether or not they wish him to contest petitioner’s request to have their names revealed to her. While there is precedent for such a procedure (Matter of Anonymous, 92 Misc 2d 224, supra), it would appear the wiser course to first require a hearing on the merits of the petition. If petitioner fails to sustain her burden, then the adoption records need not be disturbed, nor would the natural parents be unnecessarily disturbed. If the burden is met, then access to the records, either in whole or in part, can be had as the court directs and the evidence warrants. This procedure will satisfy the requirement that “the court act as an agent of the State to satisfy itself that there are present sufficient facts which warrant compromising the secrecy surrounding an adoption.” (Matter of Anonymous, supra, p 225.)
The guardian ad litem argues that he cannot assume an adversarial position in that he doesn’t know the actual wishes of his clients. This court does not agree. The sealing of adoption records exists in large part to maintain the anonymity of the natural parents and it must be presumed that it is in their interest to keep the records sealed. The *852 continued anonymity of the natural parents is the underpinning of the statute and must be presumed to be the desire of the natural parents. Therefore, the guardian ad litem, as an adversary, must oppose any relief sought to open said records.
The remaining issue is whether the moving papers allege sufficient facts which, if proven, would establish a prima facie case that “good cause” exists to open the records. They must contain allegations which substantiate that medical and/or psychological necessity require the opening of an adoption record for the health and well-being of the petitioning adoptive child. However, the medical and psychological needs must rise above mere desire or curiosity. “To conclude that mere curiosity as to one’s natural forebears constitutes good cause within the framework of section 114 of the Domestic Relations Law would render the clear import of the statute meaningless.” (Matter of Linda F. M., 95 Misc 2d 581.)
In this proceeding, petitioner’s affidavit requests that her adoption records be opened for both medical and psychological reasons. She fears that she may be a “DES Baby” and alleges that this causes strain in her psychological makeup and concern for her own medical well-being. She contends that without a complete knowledge of her family medical history, she is “at a loss as to what I can expect for myself or my children.” She also alleges that the psychological impact of not knowing her own “roots” has “devastated” her and that she suffers from the “Black Hole” syndrome. To support her allegations, petitioner has submitted a letter from her personal physician who notes that “She was apparently born prematurely and may have received the drug DES.” She also submits the report of her personal psychologist who states that petitioner “has felt an enormous void as though a part of her is incomplete.” This court finds that petitioner’s allegations as buttressed by her physician and psychologist do, allege facts, which, if proven, would entitle her to the relief requested. A full hearing as to the merits of her claim is therefore mandated.