**In the Matter of the ADOPTION OF S.J.D.**

**S.J.D., Appellant.**

**No. 00–0744.**

Supreme Court of Iowa.

April 3, 2002.

Steven J. Drahozal, Coralville, pro se.

LAVORATO, Chief Justice.

Steven J. Drahozal appeals from a district court ruling denying his request to unseal his adoption records so that he can learn the identity of his biological parents. He contends he has established the statutory requirement of good cause to unseal such records. He also contends that our statutory provisions requiring sealing of adoption records violate his right to free speech under the Federal and Iowa Constitutions. Because we conclude Steven has failed to establish such good cause and that the challenged statutes do not violate his right to free speech, we affirm.

## I. Background Facts and Proceedings.

Steven was born in Iowa City on June 27, 1971. John and Sharon Drahozal took custody of Steven on July 2, 1971, and the Drahozals' legal adoption of Steven was finalized in August 1972.

In February 2000, Steven filed a petition to unseal records pertaining to his adoption. *See* Iowa Code § 600.16A(2)(b) (1999). He alleged that good cause existed to open the records and that denial of his access to the records would violate his constitutional rights to privacy and equal protection. He also filed an "affidavit consenting to release of identifying informa-

tion." *See* Iowa Code § 600.16A(3)(b). No adverse party responded to the petition.

In March, Steven filed an amended petition, adding an allegation that denial of his access to the records would violate his right to free speech. He also filed a "request for judicial notice of adjudicative facts," asking the court to take judicial notice of several treatises written by adoption experts. He submitted excerpts from these treatises following a hearing later in March.

Steven, his wife, Allison, and his adoptive parents testified at the hearing. His adoptive parents testified they were not opposed to Steven's search for his biological parents. Steven testified he wanted to obtain information from his adoption records and find his biological parents. His reasons for wanting to find them were to (1) satisfy his curiosity, that is, to see if someone else looks like him, or if he has siblings; (2) thank them for what they did; and (3) obtain medical information.

Steven's desire to obtain medical information stems from his own mental condition. At age 15, Steven was hospitalized because of a severe depression. He suffers from manic depression and takes Prozac to treat the illness. Steven testified he wanted to know if the manic depression is hereditary, and if so, to find out whether his biological family may be undergoing more effective treatment than what he receives. He admitted, however, that the treatment he presently receives is effective. Additionally, Steven expressed concerns about the health of his two biological children from a previous marriage.

Steven has obtained some information about his biological parents from the adoption agency that handled the adoption. For example, he learned (1) his biological maternal grandfather suffered from diabe-

tes; (2) his biological parents' height, weight, and age at the time of Steven's birth; and (3) his ethnic heritage—German and Irish.

Following the hearing, the district court denied Steven's request, and Steven appealed.

## II. Issues.

Steven raises two issues on appeal. He challenges the district court's interpretation of the applicable statute. Specifically, he contends the district court erred when it ruled that the failure of Steven's biological parents to file a waiver of confidentiality pursuant to Iowa Code section 600.16A(2)(b)(1) is dispositive of good cause.

Steven also contends that denial of his request to unseal his adoption records violates his right to free speech. He contends that the freedom of speech guaranteed under the Federal Constitution and Iowa Constitution encompasses the right to receive information, including private information such as adoption records.

## III. Scope of Review.

 To the extent Steven raises questions of statutory interpretation, our review is for correction of errors at law. *State v. Ceron,* 573 N.W.2d 587, 589 (Iowa 1997). Because this is an adoption-related equitable proceeding, our review of the factual issues is de novo. *In re Adoption of Moriarty,* 260 Iowa 1279, 1285, 152 N.W.2d 218, 221 (1967).

 We review constitutional issues de novo. *State v. Simpson,* 587 N.W.2d 770, 771 (Iowa 1998). Because statutes are cloaked with a strong presumption of constitutionality, a party challenging a statute as unconstitutional carries a heavy burden of rebutting this presumption. *In re Morrow,* 616 N.W.2d 544, 547 (Iowa

2000). In this regard, the challenger must negate every reasonable basis upon which the statute could be upheld as constitutional. *Id.* The challenger must also show beyond a reasonable doubt that a statute violates the constitution. *Johnston v. Veterans' Plaza Auth.,* 535 N.W.2d 131, 132 (Iowa 1995). If a statute is susceptible to more than one construction, one of which is constitutional and the other not, we are obliged to adopt the construction which will uphold it. *Santi v. Santi,* 633 N.W.2d 312, 316 (Iowa 2001).

## IV. The District Court's Interpretation.

Iowa Code section 600.16A(2)(b) provides in relevant part:

All papers and records pertaining to ... an adoption shall not be open to inspection and the identity of the biological parents of an adopted person shall not be revealed except ... [t]he court, *for good cause,* shall order the opening of the permanent adoption record of the court for the adopted person who is an adult and reveal the names of either or both of the biological parents *following consideration of ... the following:*

(1) A biological parent *may* file an affidavit requesting that the court reveal or not reveal the parent's identity. *The court shall consider any such affidavit in determining whether there is good cause to order opening of the records*
....

Iowa Code § 600.16A(2)(b) (emphasis added).

In its ruling, the district court explained that it could open sealed adoption records upon showing that good cause exists, and both the adult adoptee and the terminated biological parents have indicated by affidavit that they desire to have the records opened. [Iowa Code] § 600.16A(2)(b)(1).

The court concluded that because the biological parents had not filed such an affidavit, the court had no authority to open the records under section 600.16A(2)(b)(1).

Additionally, the court concluded that Steven had not presented competent medical evidence to show the information was necessary to save the life of, or prevent irreparable physical or mental harm to, the adoptee or the adoptee's offspring. *See* Iowa Code § 600.16A(2)(d) (providing that the court "may, upon competent medical evidence, open termination or adoption records if opening is shown to be necessary to save the life of or prevent irreparable physical or mental harm to an adopted person or the person's offspring"). Even with this showing, the court noted that it would still be required to "make every reasonable effort to prevent" the revelation of identifying information to the adoptee. *See id.* (providing that even with the showing necessary to open the records, the court "shall make every reasonable effort to prevent the identity of the biological parents from becoming revealed under this paragraph to the adopted person").

Steven contends the district court erred in concluding that the failure of the biological parents to file an affidavit waiving confidentiality is dispositive of "good cause." We disagree with Steven's characterization of the district court's ruling, but we agree that the court erred in its interpretation of the statute.

The court did not rule that the failure of the biological parents to file a waiver of confidentiality was dispositive of good cause. Rather, the court ruled that the adult adoptee must show (1) good cause exists *and* (2) the adult adoptee and the biological parents have filed an affidavit waiving confidentiality. Nevertheless, this interpretation of the statute is erroneous.

The statute does not *require* a biological parent to file an affidavit requesting that the court reveal or not reveal the parent's identity. Rather, the statute states that a biological parent "may" file such an affidavit. Iowa Code § 600.16A(2)(b)(1). By using the word "may," the legislature signaled its intention to place the decision about whether to file an affidavit to reveal or not reveal the biological parent's identity squarely in the discretion of that parent. *Compare* Iowa Code § 4.1(30)(c) ("may" confers a power), *with id.* § 4.1(30)(a) ("shall" imposes a duty), *and id.* § 4.1(30)(b) ("must" states a requirement).

In addition, the statute directs the court to "consider" an affidavit filed by the biological parents in determining whether good cause exists to unseal the adoption records. Iowa Code § 600.16A(2)(b)(1); *see Webster's Third New International Dictionary* 483 (1993) (defining "consider" as "to reflect on; think about with a degree of care or caution"). While the existence of an affidavit might influence the district court's decision in one way or another, that fact should only be one part of the "good cause" determination, *not* a separate requirement, as the district court suggested. A determination of "good cause" should not rest on the existence of an affidavit filed by the biological parents. That brings us to two questions we must answer: what constitutes "good cause" to unseal adoption records, and whether Steven has shown the requisite "good cause."

## V. Good Cause.

**A. Background.** Our statute is silent on what constitutes "good cause" to unseal adoption records. We think some background would be helpful in understanding the concept of "good cause" in the context of unsealing adoption records.

Because English common law did not recognize the practice of adoption, adoption in this country is purely statutory. Jason Kuhns, Note, *The Sealed Adoption Records Controversy: Breaking Down the Walls of Secrecy*, 24 Golden Gate U.L.Rev. 259, 260 (Spring 1994) [hereinafter Kuhns]. In 1851, the Massachusetts Legislature passed the first general adoption law. *Id.* The early adoption statutes did not bar access to adoption records. *Id.* at 260–61.

A 1916 New York statute was among the first statutes to bar access to adoption records. *Id.* at 261. However, only the public—not the actual parties to the adoption—were barred from access to such records. *Id.*

The following year, Minnesota became the first state to enact a law closing adoption files from inspection by adult adoptees, their birth parents, and the general public. *Id.* By the end of the 1940s, most states had similar statutes. *Id.* Most provided that sealed adoption records could be opened only by court order. Melissa Arndt, Comment, *Severed Roots: The Sealed Adoption Records Controversy*, 6 N. Ill. U.L.Rev. 103, 105 (Winter 1986).

Iowa adopted a similar statute in 1941. 1941 Iowa Acts ch. 294, § 1 (codified at Iowa Code § 600.9 (1946)). It provided:

> The complete record in adoption proceedings, after filing with the clerk of the court, shall be sealed by said clerk, and the record shall not thereafter be opened except on order of the court.

Iowa Code § 600.9 (1946).

Confidentiality has been and continues to be the touchstone for these adoption statutes. As one court noted,

> [t]his confidentiality serves several purposes. It shields the adopted child from possibly disturbing facts surrounding his or her birth and parentage, it permits the adoptive parents to develop a close relationship with the child free from interference or distraction, and it provides the natural parents with an anonymity that they may consider vital. The State's interest in fostering an orderly and supervised system of adoptions is closely tied to these interests of the parties involved.

*Linda F.M. v. Dep't of Health*, 52 N.Y.2d 236, 437 N.Y.S.2d 283, 418 N.E.2d 1302, 1303 (1981) (citations omitted).

In the 1970s, in response to challenges from adoptees to the practice of sealing adoption records, states began to amend their adoption laws allowing adoptees access to their adoption records if they could show "special circumstances" or "good cause." Brett S. Silverman, *The Winds of Change in Adoption Laws: Should Adoptees Have Access to Adoption Records?*, 39 Fam. & Conciliation Courts Rev. 85, 85 (Jan.2001).

■ **B. Purpose underlying the good cause exception.** The "good cause" provision has been described as "an escape valve from the generally impenetrable nature of adoption records [that] permits individual judicial treatment where circumstances and justice so require." *Application of Hayden*, 106 Misc.2d 849, 435 N.Y.S.2d 541, 542 (N.Y.Sup.Ct.1981). The legislature has determined that this escape valve is to be used in "situations where the stringent confidentiality requirements may lead to harmful and untenuous results in a particular case." *Id.*

**1. The adoptee's burden and the court's function.** To establish good cause, the adoptee must show a compelling

need for the identifying information. *Bradey v. Children's Bureau of South Carolina,* 275 S.C. 622, 274 S.E.2d 418, 421 (1981). And what constitutes a compelling need depends upon the circumstances of each case. *Id.*

The court's function regarding "good cause" is to determine whether such cause exists and the extent of disclosure that is appropriate based on the facts of each case. *Linda F.M.,* 437 N.Y.S.2d 283, 418 N.E.2d at 1304.

**■■■ 2. What courts have said constitutes good cause and does not constitute good cause.** Good cause in the context of a request to unseal adoption records rests "upon an appropriate showing of psychological trauma or medical need." *Hayden,* 435 N.Y.S.2d at 542 (petitioner's allegation that her fear she may be a "DES Baby," which caused strain in her psychological makeup and concern for her medical well-being, justified a full hearing on the merits of her petition to unseal adoption records); *see also Juman v. Louise Wise Servs.,* 159 Misc.2d 314, 608 N.Y.S.2d 612, 617–18 (N.Y.Sup.Ct. 1994) (holding that adopted child's schizophrenia was good cause for disclosure of information about the child's biological parents "that goes beyond the scope of medical histories"). Such cause, however, must rest on more than mere curiosity. *Linda F.M.,* 437 N.Y.S.2d 283, 418 N.E.2d at 1304.

Given the high burden the good cause requirement places on an adoptee, it is not surprising that an adoptee's attempt to secure identifying information has failed in a number of cases. *See, e.g., Aimone v. Finley,* 113 Ill.App.3d 507, 69 Ill.Dec. 433, 447 N.E.2d 868, 870 (1983) (expectation of possibility that an adopted person may

inherit from her natural parents is not sufficient cause to open sealed adoption files); *In re Adoption of Baby S.,* 308 N.J.Super. 207, 705 A.2d 822, 823, 825 (1997) (natural mother who wanted to identify and locate the child she gave up for adoption, speak to him, tell him she is his biological mother, and perhaps leave her estate to him in her will, failed to show good cause for unsealing of records); *Backes v. Catholic Family & Cmty. Servs.,* 210 N.J.Super. 186, 509 A.2d 283, 293 (1985) (adult adoptee with "no psychological problem of a pathological nature," and who did not need additional medical information for the treatment of his child failed to show "good cause" required for unsealing adoption records); *Application of Romano,* 109 Misc.2d 99, 438 N.Y.S.2d 967, 971 (1981) (failure to show "good cause" where petition contained no affidavit to attest to the validity of adoptee's claim of psychological need to learn "where his 'natural roots' lie with respect to race, nationality, religion, culture and heredity").

**C. Analysis.** Earlier we mentioned the interests that confidentiality in adoption statues are meant to serve. These interests include those of the adoptee, whether a minor or adult, the adopting parents, the biological parents, and the state. We think section 600.16A is the legislature's attempt to balance those interests. The balance has been struck heavily in favor of keeping adoption records sealed.

Yet, in two instances, the legislature has left open a window of opportunity for unsealing adoption records. One instance involves the good cause exception. However, we think the bar is high as far as proving this exception. Proof of this appears in Iowa Code section 600.16A(2)(d), which pertinently provides:

The juvenile court or court may, upon competent medical evidence, open termination or adoption records if opening is shown to be necessary to save the life of or prevent irreparable physical or mental harm to an adopted person or the person's offspring. The juvenile court or court shall make every reasonable effort to prevent the identity of the biological parents from becoming revealed under this paragraph to the adopted person. The juvenile court may, however, permit revelation of the identity of the biological parents to medical personnel attending the adopted person or the person's offspring. These medical personnel shall make every reasonable effort to prevent the identity of the biological parents from becoming revealed to the adopted person.

Iowa Code § 600.16A(2)(d). Thus, the court may order the adoption record unsealed only if competent medical evidence shows such action is necessary to save the life of or prevent irreparable physical or mental harm to an adopted person or the person's offspring. Additionally, even if medical need dictates opening the records, the legislature has taken pains to insure as reasonably as possible that *identifying* information will not be revealed in the process.

Finally, to underscore how important the legislature believes it is to preserve the privacy of the biological parents and prevent revelation of their identities, the legislature has made it a criminal offense to reveal such information contrary to the terms of the statute. *See* Iowa Code § 600.16A(5) ("Any person, other than the adopting parents or the adopted person, who discloses information in violation of this section, is guilty of a simple misdemeanor.").

The other instance in which the legislature has allowed inroads into the confidentiality of adoption records is found in Iowa Code section 600.16A(3). That provision provides for revealing identifying information regarding biological parents and *adult* adopted children if both the adult adopted child and a biological parent have placed in the adoption record written consent to reveal their identities. Either party, however, may withdraw that consent at any time by placing a written withdrawal of consent in the adoption record. *See* Iowa Code § 600.16A(3).

 Under our statute, we think good cause to invade the privacy of biological parents by revealing their identities without their consent should include no less than a showing of a medical need to save the life of or prevent irreparable physical or mental harm to an adult adopted person requesting the identifying information. This showing should be made upon competent medical evidence. This of course is the same standard found in section 600.16A(2)(d), earlier mentioned, and comports with the standard for good cause adopted by most courts. We see no reason why the standard for good cause should be any less onerous than the section 600.16A(2)(d) standard when a biological parent has not consented to a revelation of his or her identity.

As mentioned, section 600.16A(2)(b)(1) allows the court to consider a biological parent's consent to reveal his or her identity in determining good cause. However, because the facts here do not show that either biological parent has filed an affidavit requesting that the court reveal their identities, we make no determination regarding how that additional factor should affect a good cause showing.

 Steven has argued forcibly that scholars and authorities in the area of

adoption now view the process of adoption in a light different from what the view was when the present statute was enacted. While some may agree that "changed attitudes may warrant a new look at the purpose and effect of this law by the legislature," it is not our function "to redraft or to interpret laws differently" from what the legislature intended "solely to reflect current values or lifestyles." *Hayden*, 435 N.Y.S.2d at 542. We agree with the court in *Hayden* that "[i]t is best left to the legislature to distinguish the changing mores from shifting moods in society." *Id.*

■ The record before us falls far short of meeting the high standard we feel the legislature has set for a showing of good cause to reveal the identifying information Steven seeks. He testified that he wants to find his biological parents to (1) satisfy his curiosity, (2) thank them for what they did, and (3) obtain medical information. Steven's wife testified that he became more restless when he started to get involved in his research and questioning about his biological family. Clearly, Steven's "curiosity" and "restlessness" are not a sufficient showing of good cause.

The record does reflect that Steven has been treated for a mental illness, manic depression. However, he presented no medical evidence to link the disorder to his status as an adopted child. It also appears from the record that the disorder, while it may be hereditary, has no other relation to his status as an adoptee. Moreover, he expressed more of a curiosity over whether the condition is hereditary than any particular medical reason for wanting to know. Finally, the record is clear that Steven has been able to function in society, in spite of his mental condition and in spite of his stated "curiosity" and "distraction" over finding his biological parents. He has

graduated from law school, and apparently fulfills his duties as a husband and father without significant problems.

In short, Steven has failed to show a compelling need for the identifying information. His proof falls far short of establishing by competent medical evidence that he needs the identifying information to save his life or to prevent irreparable physical or mental harm to himself—the minimum showing necessary to meet the high standard set by the legislature for the good cause requirement.

That brings us to the last issue Steven raises: whether the statute violates what he claims is his constitutional right to receive information, including private information such as adoption records.

## VI. Right to Receive Information.

Steven contends that denying him—an adult adoptee—the right to see his adoption records violates his freedom of speech under the First Amendment of the Federal Constitution and article I, section 7 of the Iowa Constitution. In support of his contention, he argues that freedom of speech under these constitutional provisions encompass the right to receive information, including private information such as adoption records.

The First Amendment of the Federal Constitution prohibits Congress from making any law abridging free speech. This prohibition applies to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–18 (1940). The Iowa Constitution also protects free speech and imposes the "same restrictions on the regulation of speech as does the Federal Constitution." *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997).

To date "[n]o federal or state court has accepted" this constitutional challenge. Kuhns, 24 Golden Gate U.L. Rev at 268. As Kuhns explains,

[a]lthough recognizing that adoptees have a general right to privacy and to receive information, the courts have rejected the argument that adoptees have a fundamental right to learn the identities of their biological parents. The courts maintain that no constitutional or personal right is unconditional and absolute to the exclusion of the rights of all other individuals. The right to privacy and to information asserted by adoptees directly conflicts with the right to privacy of birth parents to be left alone. Due to these conflicting interests, the sealed records statutes are upheld because they bear a rational relationship to the permissible state objective of protecting the integrity of the adoption process. Although the adoptee may no longer need the state's protection upon reaching adulthood, courts state that the birth parents' interest in confidentiality may actually become stronger.

*Id.* at 268–69 (footnotes omitted); *accord In re Roger B.,* 84 Ill.2d 323, 49 Ill.Dec. 731, 418 N.E.2d 751, 757 (1981); *Mills v. Atlantic City Dep't of Vital Statistics,* 148 N.J.Super. 302, 372 A.2d 646, 650–52 (1977). We agree with this analysis and adopt it. We conclude therefore that Steven has not established beyond a reasonable doubt that our statutory provisions regarding sealing of adoption records violate free speech under the Federal or Iowa Constitutions.

## VI. Disposition.

Although the district court erred in its interpretation of Iowa Code section 600.16A(2)(b)(1), we conclude the court did not err in denying Steven's request to unseal his adoption records. We conclude based on the record before us that Steven has failed to show good cause to unseal these records. Additionally, we reject his claim that our adoption statutes requiring sealing of adoption records violate his freedom of speech under either the Federal or Iowa Constitutions. For these reasons, we affirm.

**AFFIRMED.**