WATERMAN, Justice
(dissenting).
I respectfully dissent from the majority opinion. I join in the preemption analysis of Chief Justice Cady’s dissent, but would reach the merits and conclude the City of Hamburg’s ordinance restricting conduct at defendant’s strip club, Shotgun Geniez, is constitutional under well-settled precedent. The majority erroneously deprives local governments of the ability to regulate such establishments in our state and unfairly blames the legislature for this outcome. As Chief Justice Cady explains, live nude dancing simply does not fall within the definition of “obscene materials” in Iowa Code section 728.1(2), (5) (2009) in which the legislature prescribed.a list of inanimate objects like photos, movies, and magazines that are removed from local regulation by the preemption provision in section 728.11 that is expressly limited to obscene materials.
The strip club challenges the ordinance under article I, section 7 of the Iowa Constitution, but offers no persuasive reason to diverge from settled federal precedent in applying the Iowa constitutional protections for speech and expressive conduct. I believe the protection for the expressive conduct at issue is the same under the Iowa and Federal Constitutions. See In re Adoption of S.J.D., 641 N.W.2d 794, 802 (Iowa 2002) (“The Iowa Constitution also protects free speech and imposes the ‘same restrictions on the regulation of speech as does the Federal Constitution.’ ” (quoting State v. Milner, 571 N.W.2d 7, 12 (Iowa 1997))); Des Moines Register & Tribune Co. v. Osmundson, 248 N.W.2d 493, 498 (Iowa 1976) (“We believe the federal and state constitutional provisions, which contain almost identical language, impose the same limitation on abridgement of freedom of the press.”).
Although federal precedent makes clear nude dancing is protected expressive conduct, it is “within the outer perimeters of the First Amendment” and only “marginally so.” Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991) (plurality); accord City of Erie v. Pap’s A.M., 529 U.S. 277, 289, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265, 278 (2000) (plurality) (stating nude dancing “falls only within the outer ambit of the First Amendment’s protection”). The expressive conduct at issue in this case, including pole dancing, is a far cry from the heart of the First Amendment — protection for political speech and debate to better inform the citizenry for self-government. See Knox v. Serv. Emps. Int’l Union, Local 1000, - U.S. -, -, 132 S.Ct. 2277, 2288, 183 L.Ed.2d 281, 296 (2012).[7] *206 As Justice Stevens aptly observed, “it is manifest that society’s interest in protecting [erotic] expression is of a wholly different, and lesser,, magnitude than the interest in untrammeled political debate” and “few of us would march our sons and daughters off to war to preserve the citizen’s right” to view nude dancing or receive lap dances. Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310, 326 (1976) (plurality). Most importantly, the First Amendment and its Iowa counterpart protect the right of citizens to criticize government officials. That is not what the strippers are doing at Shotgun Geniez.
The Supreme Court has twice upheld state laws requiring nude dancers to wear “G-strings” and “pasties,” concluding the restrictions imposed de minimis infringement on marginally protected speech while legitimately targeting undesirable secondary effects associated with sexually oriented business. See Pap’s A.M., 529 U.S. at 294, 120 S.Ct. at 1393, 146 L.Ed.2d at 281 (reasoning a ban on total nudity arguably “has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped,” but “[a]ny effect on the overall expression is de minimis”)-, Glen Theatre, Inc., 501 U.S. at 571, 111 S.Ct. at 2463, 115 L.Ed.2d at 514 (reasoning the G-string and pasties requirement “does not deprive the dance of whatever erotic message it conveys”).
I believe Iowa local governments may enact restrictions designed to limit undesirable secondary effects such as prostitution, assault, and drug distribution associated with strip clubs in their own communities, unless the restrictions “so interfere[] with the message that it essentially bans the message.” Pap’s AM., 529 U.S. at 293, 120 S.Ct. at 1393, 146 L.Ed.2d at 280. The City of Hamburg’s ordinance restricts total nudity in a manner upheld by the Supreme Court. Id. The ordinance also prevents the strip club from selling alcohol, which is unrelated to the erotic message. The ordinance further requires sexually oriented business to close by 2 a.m., restricts consumption of alcohol brought in by patrons, requires dancers to perform on a stage at least six feet from customers, and limits how customers can properly tip dancers. In my view, all these restrictions pass constitutional muster.
The strip club complains the City’s six-foot distance requirement “kills the business model.” No doubt a customer’s sensory appreciation of the dancer’s artistic message is enhanced by the grinding physical contact of a vigorous lap dance. But, I see no constitutional right to give a paying customer a lap dance. If it is the “artistic expression” that is constitutionally protected, the City may impose reasonable time, place, and manner restrictions to curb undesirable secondary effects. A six-foot minimum distance requirement still allows a customer a full view of the dancing without the heightened risk of secondary effects encouraged by physical contact.
Numerous federal appellate courts have held restrictions like Hamburg’s permissibly impose incidental and minimal burdens on the expressive message of nude dancing and constitute a legitimate effort to control the negative secondary effects associated with sexually oriented businesses. See 81 Video/Newsstand, Inc. v. Sartini, 455 Fed. *207 Appx. 541, 561-62 (6th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1637, 182 L.Ed.2d 234 (2012) (upholding no-touch and hours restrictions against First Amendment challenge); Fantasy Ranch Inc. v. City of Arlington, 459 F.3d 546, 562 (5th Cir.2006) (“[W]e hold that the effect on the overall expression is de minimis, as the City of Arlington has muted only that portion of the expression that occurs when the six-foot line is crossed, while leaving the erotic message largely intact.”); G.M. Enters., Inc. v. Town of St. Joseph, 350 F.3d 631, 638 (7th Cir.2003) (upholding a no-touching requirement because “a minimal physical buffer between patrons and dancers does not reduce the availability of nude dance entertainment”); Wise Enters., Inc. v. Unified Gov’t of Athens-Clarke Cnty., 217 F.3d 1360, 1363-65 (11th Cir. 2000) (upholding ordinance preventing sale of alcohol in sexually oriented business); Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1364-65 (11th Cir.1999) (upholding an hours-of-operation and square-foot limitation because the restrictions “do not directly regulate[] the expressive conduct that is the basis of the plaintiffs’ First Amendment challenges: nude dancing”); Farkas v. Miller, 151 F.3d 900, 905 (8th Cir.1998) (rejecting First Amendment challenge to Iowa statute requiring pasties and G-strings). These authorities are persuasive and should be followed when applying our Iowa constitutional protections to this case.
For these reasons, I would affirm the district court ruling upholding the City of Hamburg ordinance.

. The Knox Court this summer summarized the core First Amendment values as follows:
Our cases have often noted the close connection between our Nation's commitment to self-government and the rights protected by the First Amendment. See, e.g., Brown v. Hartlage, 456 U.S. 45, 52, 102 S.Ct. 1523, 1528, 71 L.Ed.2d 732, 740 (1982) ("At the core of the First Amendment are certain basic conceptions about the manner in which political discussion in a representative democracy should proceed[.]”); Buckley v. Valeo, 424 U.S. 1, 93, n. 127, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam) (“[T]he central purpose of the Speech and Press Clauses was to assure a society in which 'uninhibited, robust, and wide-open’ public debate concerning matters of public interest would thrive, for only in such a society can a healthy representative democracy flourish[.]”); Cox v. Louisiana, 379 U.S. 536, 552, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) ("Maintenance of the opportunity for *206 free political discussion is a basic tenet of our constitutional democracy[.]”); Whitney v. California, 274 U.S. 357, 375, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandéis, J„ concurring); Patterson v. Colorado ex rel. Attorney General of Colo., 205 U.S. 454, 465, 27 S.Ct. 556, 51 L.Ed. 879 (1907) (Harlan, J., dissenting).
Knox, - U.S. at -, 132 S.Ct. at 2288, 183 L.Ed.2d at 296.