

# NUMBER 13-20-00533-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF H.L.S. AND W.A.S., CHILDREN

---

**On appeal from the 267th District Court
of DeWitt County, Texas.**

---

## OPINION

**Before Justices Hinojosa, Tijerina, and Silva
Opinion by Justice Silva**

Appellant Rachel appeals the trial court's denial of her motion to unseal the records in appellee Paige's adoption of Harriet and William, children.[1] By three issues, which we construe as two, Rachel argues (1) the trial court abused its discretion by denying her motion to unseal the records because good cause exists; and (2) the trial court erred when it denied the admission of Rachel's non-parent caregiver authorization agreement

---

[1] We refer to the parties and children by aliases in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

of the subject children as evidence. We affirm.

## I.   BACKGROUND

Rachel is the biological maternal grandmother of Harriet and William. Paige was the children's maternal step-great grandmother and Rachel's stepmother. Paige adopted Harriet and William on November 20, 2017. In the adoption decree, the trial court ordered that "[a]ll papers and records in this case, including the minutes of the [trial court], [be] . . . sealed."

In November 2019, Rachel, as trustee, brought a suit against Paige and two related businesses.[2] According to Rachel's petition, in 2013, Paige and her late husband established three trusts, one for each of the children, and one for their biological mother, Diane. One percent ownership of one of the businesses, a limited partnership, was placed into the corpus of each trust. The primary income for the limited partnership was from the mineral interests of several properties owned by the limited partnership. Rachel was appointed the sole trustee of each trust. Rachel asserted the causes of action of common law fraud, fraud by nondisclosure, statutory fraud, and breach of fiduciary duty for falsely reporting income from the mineral interests and failing to disclose certain material facts. Rachel also requested the trial court appoint an auditor to assess the accounts between the parties and the ownership interest in the limited partnership.

In response, Paige filed an original petition in intervention as next friend for Harriet and William, seeking removal of Rachel as the trustee for the trusts for William and

---

[2] We are not identifying the names of the businesses because they contain the parties' and children's surname.

Harriet. Paige included various factual assertions in the petition, including allegations that the children were removed from Diane's and Rachel's care by the Texas Department of Family and Protective Services (Department) and that distributions could not be made to the trusts because Rachel "was either incarcerated or nowhere to be found."

On September 28, 2020, Rachel filed a motion in the adoption suit to unseal the adoption records. Rachel argued that she was "a person interested in the subject matter of the adoption" because she is the biological maternal grandmother and trustee for the children and "had the rights and authority of a managing conservator of the children" pursuant to a non-parent caregiver authorization agreement. *See* TEX. FAM. CODE ANN. §§ 34.0015–.009 (permitting a parent to enter into an agreement with a non-parent to authorize the non-parent to perform certain acts for and on behalf of the child). Rachel further identified what she construed as errors or omissions in the adoption process and decree and noted that she was not provided notice, by way of service or otherwise, of the adoption.

At a hearing on the motion to unseal the records, Rachel testified that in 2014, Diane executed an "authorization for power of attorney" over the children. Rachel moved to admit a copy of the authorization agreement into evidence, and Paige objected to the document's relevance. Paige argued that the authorization agreement was not relevant because it was terminated as a matter of law upon the entry of an order that relates to the custody or visitation of the children. Rachel responded that the authorization agreement "establishe[d] certain rights and authority of [Rachel] with respect to the children." The trial court sustained Paige's objection.

3

Rachel testified that she was not aware that Paige was seeking adoption of the children, was not considered as a person to adopt the children, and did not receive formal notice of the adoption proceedings.[3] Rachel further testified that the only contact she had with the Department, regarding the children, was seeing the Department the day it removed the children. The trial court admitted into evidence Paige's disclosures from the trust suit which listed two Department employees as persons having knowledge of material facts. Rachel also offered Paige's responses to Rachel's request for production wherein Paige objected to the requests for adoption records. In some responses, Paige stated that she would produce the documents in her possession "[s]ubject to an agreed protective order being entered into by the parties[.]" The supplemental response to the requests for production state: "See information produced hereto pursuant to the Agreed Protective Order." Neither the contents of the agreed protective order nor the items produced were introduced into the record by either party.

On cross examination, Rachel testified that she did not seek to have the children placed with her after they were removed from Diane "[b]ecause [she] was told that [she] could not have any contact with them." Rachel acknowledged that she was "trying to undo the adoption[.]"

In her closing argument, Rachel argued that Paige's objections to Rachel's production requests for adoption records "[was] tantamount . . . to an offensive use of the privilege type of situation" where a person makes certain allegations then seeks to

---

[3] In her original petition for adoption, Paige indicated that she was the sole managing conservator at the time adoption was sought. Although it is unclear when the children began residing with Paige, the adoption order stated that "[t]he [trial c]ourt finds that the children have lived in the home of [Paige] for at least six months."

4

withhold the information based on some privilege. Rachel further argued that the family code required the Department to notify any relative of the children within the third degree of consanguinity about the children's removal from their parent. Rachel stated that "she would like to review the [adoption] records and have an opportunity to challenge what occurred."

In her closing argument, Paige recalled Rachel's testimony that the purpose for seeking to unseal the adoption records was to undo the adoption. Paige argued that the Texas Family Code prohibits a direct or collateral attack on the validity of an adoption after six months, and thus Rachel lacked "good cause" to unseal the records. Paige further argued that being a trustee does not present "good cause." Rachel responded that "the right to challenge [an adoption] is not . . . dead [at] six months." As an example, Rachel asked: "What about the case of a void order, where there's no notice and there's a constitutional due process issue?" Rachel did not otherwise mention constitutional due process rights or violations.

The trial court denied Rachel's motion by written order on November 9, 2020. This appeal followed.

## II.   UNSEALING ADOPTION RECORDS

### A.   Standard of Review

Whether a trial court erred in its determination of whether good cause exists is generally reviewed under an abuse of discretion. *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3 (Tex. 1994) (examining "good cause" analysis for allowing undisclosed expert witness to testify under an abuse of discretion); *In re Bordelon*, 578 S.W.3d 197, 200

(Tex. App.—Tyler 2019, orig. proceeding) (applying an abuse of discretion standard to the trial court's determination of plaintiff's "good cause" for failing to prosecute a case with diligence); *In re Sanchez*, 571 S.W.3d 833, 836–37 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding) (applying an abuse of discretion standard to the trial court's determination of "good cause" to compel physical examination of plaintiff under Texas Rule of Civil Procedure 204.1); *Munoz v. Mo. Pac. R.R. Co.*, 823 S.W.2d 766, 768 (Tex. App.—Corpus Christi–Edinburg 1992, no writ) (reviewing the trial court's determination of "good cause" to allow undisclosed witness testimony under an abuse of discretion standard) (citing *Yeldell v. Holiday Hills Ret. & Nursing Ctr., Inc.*, 701 S.W.2d 243, 246–47 (Tex. 1985)). Accordingly, we apply an abuse of discretion standard to the trial court's determination of whether good cause exists to unseal adoption records.

"A trial court abuses its discretion when a 'decision is arbitrary, unreasonable, and without reference to guiding principles.'" *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). "When reviewing matters reserved for the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court." *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989)).

## B.    Applicable Law

### 1.    Adoption

In order to fully analyze Rachel's arguments, we must also summarily review the statutes governing adoptions in Texas. A child whose relationship to each living parent

6

has been terminated may be adopted. TEX. FAM. CODE. ANN § 162.001(b)(1). Subject to the standing requirements set out in Chapter 102, any adult may petition to adopt a child who is eligible for adoption. *Id.* § 162.001(a); *see id.* § 102.003–.006 (standing provisions to bring suit affecting the parent-child relationship, including adoption). Several requirements to complete an adoption must occur before the trial court may grant the adoption. *Id.* § 162.002–.011.

Among the requirements is: (1) the preparation and filing of an adoption evaluation, *id.* § 162.003; (2) the preparation and filing of a health, social, educational, and genetic history (HSEGH) report, *id.* § 162.005; (3) the filing of the criminal histories of each person seeking adoption, *id.* § 162.0085; (4) the child must have resided with the petitioners for at least six months, unless waiver of this requirement is in the child's best interest, *id.* § 162.009; and (5) the consent to the adoption by the child's managing conservator, and, if twelve years or older, the consent of the child, *id.* § 162.010.[4]

Generally, "the validity of an adoption order is not subject to attack after six months after the date the order was signed." *Id.* § 162.012(a). An exception to this exists where a necessary party was served process through publication. *Id.*; *see* TEX. R. CIV. P. 329 (allowing the trial court to grant a new trial where defendant was served process by publication and did not appear). Further, "[t]he validity of a final adoption order is not subject to attack because a health, social, educational, and genetic history was not filed." TEX. FAM. CODE ANN. § 162.012(b).

---

[4] "The court may waive the requirement of consent by the managing conservator if the court finds that the consent is being refused or has been revoked without good cause." TEX. FAM. CODE ANN. § 162.010(a). Further, the trial court may waive the requirement of a child's consent if doing so would serve the best interest of the child. *Id.* § 162.010(c).

7

The legislature has imposed limitations to standing on a grandparent's ability to file a suit affecting the parent-child relationship where the parent-child relationship between the child and every living parent has been terminated. *Id.* § 102.006(a)(3) (prohibiting relative by blood, adoption, or marriage of either former parent from filing an original suit after termination). However, there are exceptions to this limitation. *Id.* § 102.006. Certain relatives, including a grandparent, may file an original suit or a suit for modification "requesting managing conservatorship of the child not later than the 90th day after the date the parent-child relationship between the child and the parent is terminated in a suit filed by the Department . . . requesting the termination of the parent-child relationship." *Id.* § 102.006(c). Additional exceptions are made for "a person who: (1) has a continuing right to possession of or access to the child under an existing court order; or (2) has the consent of the child's managing conservator, guardian, or legal custodian to bring the suit." *Id.* § 102.006(b).

### 2. Offensive Use Doctrine

The "offensive use doctrine" "is a type of waiver that occurs if the plaintiff uses a privilege offensively to shield information that would be material and relevant to the defense against the plaintiff's claims." *In re Nance*, 143 S.W.3d 506, 513 (Tex. App.—Austin 2004, orig. proceeding). When applied, the offensive use doctrine prohibits a plaintiff from "us[ing] one hand to seek affirmative relief in court and with the other lower[ing] an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon [their] right to maintain [their] action." *Id.* (quoting *Ginsberg v. Fifth Ct. of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) (orig. proceeding)). In

other words, a person's otherwise privileged evidence is no longer privileged when the offensive use doctrine applies. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163–64 (Tex. 1993) (orig. proceeding). An "offensive use waiver of a privilege should not lightly be found." *Id.* at 163.

The Texas Supreme Court has established some factors that guide courts in determining whether a waiver should be applied:

> First, before a waiver may be found the party asserting the privilege must seek affirmative relief. Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought. Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence.

*Id.* "If any one of these requirements is lacking, the trial court must uphold the privilege." *Id.*

### 3. Unsealing Adoption Records

In a suit for adoption, a trial court may, on its own motion or a motion by a party, seal the file including the minutes of the court. *See* TEX. FAM. CODE ANN. § 162.021(a). The records of a suit for adoption must remain confidential, and no person is entitled to access them except for good cause shown by the court that granted the adoption. *Id.* § 162.022. As both parties note, what constitutes good cause to unseal adoption records is a matter of first impression. Accordingly, we will look to persuasive authority to assist our review.

Texas is not alone in states that protect the confidentiality of adoption records and requires "good cause" to reveal those records. For example, Iowa, New York, South

9

Carolina, New Jersey, and Rhode Island have similar requirements.[5] *See, e.g.*, IOWA CODE ANN. § 600.16A (West); N.Y. DOM. REL. LAW § 114 (McKinney); S.C. CODE ANN. § 63-9-780; N.J. STAT. ANN. § 9:3-52 (West); *In re Philip S.*, 881 A.2d 931, 933 (R. I. 2005). These states have provided some insight as to what may constitute good cause.

The Iowa Supreme Court requires an adoptee to show "a compelling need for identifying information" in adoption records to establish good cause to release them. *In re S.J.D.*, 641 N.W.2d 794, 799–800 (Iowa 2002). "[W]hat constitutes a compelling need depends upon the circumstances of each case." *Id.* at 800. In *S.J.D.*, the adult adoptee sought to learn information about his biological parents, and the Iowa Supreme Court concluded that under their statute "to invade the privacy of biological parents by revealing their identities without their consent should include no less than a showing of a medical need to save the life of or prevent irreparable physical or mental harm to an adult adopted person requesting the identifying information." *Id.* at 801. The court held that the adoptee's stated reasons—satisfying his curiosity, thanking his biological parents, and obtaining medical information—were not sufficient to show good cause. *Id.* at 802.

New York's approach is to determine good cause "on the facts of each case." *In re Alice, L.L.T.*, 960 N.Y.S.2d 857, 859 (Sur. 2012) (quoting *In re Linda F.M.*, 418 N.E.2d 1302 (N.Y. 1981), *appeal dism'd,* 454 U.S. 806 (1981)) (concluding adoptee seeking to establish religious affiliation or status through biological mother was not sufficient for good cause). New York has noted that an adoptee citing "serious health issues" may obtain

---

[5] This is not intended to include a complete survey of each state that requires good cause to unseal adoption records.

medical history from the adoption records. *Id.* at 858. While general curiosity of one's lineage has generally not been sufficient to establish good cause, a showing of "specific substantive benefits" of establishing heritage for the purposes of gaining certain citizenships may be. *Id.* at 859–60 (citing *In re Victor M.I.I.*, N.Y.L.J., 2009 WL 864470, at *2 (Sur. Ct., Nassau County, Mar. 30, 2009)) (holding good cause was shown where "petitioner averred specific substantive benefits he would gain from Hungarian citizenship").

New Jersey also leaves the determination of whether good cause is shown to the court "based on the facts and circumstances of each individual case." *Mills v. Atlantic City Dep't of Vital Stats.*, 148 N.J. Super. 302, 312 (Ch. Div. 1977); s*ee also In re Adoption of a Child by W.H.A.*, No. A-0164-16T3, 2018 WL 2923107, at *1 (N.J. Super. Ct. App. Div. June 6, 2018). In one instance, New Jersey concluded that the records may be unsealed in order to determine whether an adoptee is of Native American heritage and, if so, through which tribe, in order to comply with the Indian Child Welfare Act. *In re Mellinger*, 672 A.2d 197, 199 (App. Div. 1996); *see* 25 U.S.C. § 1917 (requiring a court to inform an adoptee of tribal affiliation if requested by an adoptee who has reached the age of eighteen). However, the court concluded that to accomplish this goal, the trial court could appoint a person to conduct an investigation and report to the trial court any tribal affiliation of the adoptee's biological parents. *See In re Mellinger*, 672 A.2d at 199.

In South Carolina, courts are permitted to consider the best interest of the child in determining whether good cause exists and has been shown. *Doe v. Ward Firm, P.A.*, 579 S.E.2d 303, 305 (S.C. 2003) (citing S.C. CODE ANN. § 20–7–1647 (Supp. 2001)).

When the interests of a child and adult conflict, the South Carolina legislature has mandated that the conflict must be resolved in the child's favor. *Id.* Therein, the South Carolina Supreme Court found that the adoptive parents of a child showed good cause to release adoption records where their child suffered from physical and mental health problems, and the child's biological family's medical history would assist in diagnosing and treating the child. *Id.* at 306. However, the court limited the release of records to a "trained, confidential intermediary" to prepare a report for the court pursuant to South Carolina statute. *Id.* at 307 (citing S.C. CODE ANN. § 20–7–420(3) (1976)).

Finally, the Rhode Island Supreme Court has concluded that a person seeking access to adoption records "*bears a heavy burden* in establishing the requisite good cause." *In re Philip S.*, 881 A.2d at 933 (quoting *In re Assalone*, 512 A.2d 1383, 1385 (R.I. 1986)). The court noted that "the confidentiality of the adoption process is deemed to be of an extraordinarily high value." *Id.* The *In re Philip S.* court concluded that an adoptee failed to establish good cause to reveal the identity of his biological parents where he failed to submit objective evidence to support his request. *Id.* at 934. The adoptee asserted that, based on his understanding of his membership of the Mormon faith, he was entitled to the identity of his biological parents. *Id.* at 932. The court noted that the adoptee's request placed two important rights against each other: the adoptee's religious liberties and the biological parents' right to privacy. *Id.* However, the court concluded that the burden to establish good cause remained on the adoptee, which he failed to meet without objective evidence of the need to access the records. *Id.* at 934–35.

This Court has found no cases concerning "good cause" as applied to a biological

12

grandparent seeking to unseal adoption records.

**C.     Analysis**

By what we construe as her first issue, Rachel argues the trial court erred by denying her request to unseal the adoption records because she has demonstrated good cause to do so. Rachel argues that she established good cause on two separate bases: (1) "[t]he adoption proceeding was marked with irregularities" including a violation of her due process right to have notice of the proceeding, such that would permit Rachel to challenge the adoption; and (2) Paige's offensive use of the adoption records through her pleadings and discovery responses in the trust suit created a waiver of the confidentiality of the records.

Although no other court in Texas has established what may constitute good cause, we agree with courts across the country that such a determination must be made on a case-by-case basis. In determining whether good cause exists, a trial court may consider, among other factors: (1) the relationship of the person seeking to unseal the records to the parties of the adoption; (2) the stated reason for unsealing records; (3) the evidence presented which supports the stated reason for unsealing the records; (4) the privacy interests of the parties, including the biological parents; (5) whether the person is seeking complete or partial release of the records; (6) whether the person is seeking identifying or non-identifying information; (7) whether the information sought is available by some other means; (8) whether the disclosure of information is mandated by other law; (9) the timing of the request; and (10) the best interest of the child. *See generally In re S.J.D.*, 641 N.W.2d at 799–800 (considering the applicant's stated reason to unseal the records

13

and the privacy interests of the biological parents); *In re Mellinger*, 672 A.2d at 199 (considering that federal law required the disclosure of the information sought); *Doe*, 579 S.E.2d at 305 (considering the best interest of the child and whether information sought could be limited to review by a trained professional); *In re Philip S.*, 881 A.2d at 934 (considering the evidence presented supporting the adoptee's request to unseal records).

In the matter before us, whether Rachel demonstrated good cause to unseal the records can be determined by reviewing her stated reasons for unsealing the records: (1) attacking the adoption; and (2) asserting the offensive use doctrine of the adoption records in another suit. Rachel has not established her ability to do either.

### 1. Attack on the Adoption

Citing *Moore v. City of East Cleveland*, Rachel argues for the first time on appeal that she had a due process right to formal notice of the adoption proceedings under the Fourteenth Amendment. 431 U.S. 494 (1977) (plurality opinion)[6]; U.S. Const. amend. XIV, § 1 (prohibiting "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law"). It is "not apparent from the context" of the trial record that Rachel "was attempting to raise a due process challenge" to the adoption proceedings. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (holding that appellant did not preserve constitutional due process violation for review where he did not raise the

---

[6] In *Moore v. City of East Cleveland*, the Supreme Court considered whether a municipal ordinance that limited occupancy of a dwelling to members of a nuclear family violated due process rights of a grandmother and her grandchildren who were residing together. 431 U.S. 494, 496–97 (1977) (plurality opinion). The plurality "recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 499 (quoting *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-640 (1974)). The Court ultimately held that the municipal ordinance violated the family's substantive due process rights. *Id.* at 506.

argument at trial); TEX. R. APP. P. 33.1 (requiring a party make a timely request, motion, or objection, state the specific grounds therefor, and obtain a ruling to preserve the argument for appellate review). As such, Rachel's due process argument was not preserved for review. *See In re L.M.I.*, 119 S.W.3d at 710–11; TEX. R. APP. P. 33.1. Even so, Rachel offers insufficient support for her contention that, as a grandmother, due process requires her to be served with notice of the adoption proceedings, and we find none. Indeed, such a requirement would create an undue burden on the adoption process, particularly where biological parents have agreed to have their child adopted by a person or family of their choosing.[7]

Rachel argues that Texas Family Code § 262.1095 is a "notice provision" which supports her assertion. *See* TEX. FAM. CODE ANN. § 262.1095(a) (requiring the Department to notify relatives within the fourth degree of consanguinity of a child when *it takes possession of that child*). However, § 262.1095 includes an exception: the Department is not required to notify a relative "if [it] determines [that] providing information is inappropriate because the individual has a criminal history or a history of family violence." *Id.* § 262.1095(c). There is no testimony in the record to indicate whether Rachel falls within that exception or not. Rachel's testimony does demonstrate that she was aware of the removal and not permitted to have contact with the children. Even if Rachel did not meet an exception to § 262.1095(c), that statute does not require a prospective adoptive parent to provide notice to a former relative of the children when

---

[7] The record does not state the grounds on which the parent-child relationship was terminated—the example presented is merely intended to be exactly that.

15

seeking adoption. *See id.*

As to Rachel's remaining grounds to attack the adoption, "the validity of an adoption order is not subject to attack after six months after the date the order was signed." *See id.* § 162.012(a).[8] Further, a grandparent does not have standing to file an original suit, including to seek adoption, beyond the ninetieth day from the date the parent-child relationship was terminated in a suit filed by the Department. *See id.* § 102.006(c). Thus, Rachel may not seek to undo the adoption nor seek adoption of the children herself and has failed to establish good cause to unseal the records. *See id.* §§ 102.006(c), 162.012(a).

## 2.    Offensive Use Doctrine

It is not entirely clear that the adoption records contain the documents and evidence Rachel seeks in her application of the offensive use doctrine.[9] However, for the purposes of this appeal, we will presume they do. In determining whether to apply the offensive use doctrine, we note that Rachel has established that Paige is seeking affirmative relief in the trust suit. *See Republic Ins. Co.*, 856 S.W.2d at 163. For the purposes of this appeal, we will presume the information sought by Rachel is "outcome determinative." *See id.* (holding mere relevance of the information is insufficient grounds to waive privilege). However, Rachel presented no evidence or testimony that the records

---

[8] We disagree with Rachel that "[t]he adoption proceeding was marked with irregularities." At any rate, Rachel has failed to demonstrate that any irregularities would permit her to attack the adoption.

[9] Adoptions filed after a suit for termination brought by the Department are typically, although not exclusively, filed in a separate cause of action. The records Rachel seeks related to the offensive use appear to be related to the termination suit. However, it is unclear from the record whether the adoption occurred in the same cause of action as the termination suit.

are not available from some other source.[10] *See id*. The record is entirely silent as to whether Rachel has made any attempt to secure the information or evidence elsewhere, such as from the Department by subpoena or deposition. *See id.* Because Rachel has failed to satisfy the third consideration before applying the offensive use doctrine, the trial court must uphold the confidentiality of the information. *See id.*

### 3. Summary

In light of the foregoing, we conclude Rachel has not established good cause to unseal the adoption records. *See* TEX. FAM. CODE ANN. § 162.022. Therefore, the trial court did not abuse its discretion when it denied Rachel's motion. *See Bullock*, 870 S.W.2d at 3. Rachel's first issue is overruled.

### III. ADMISSION OF EVIDENCE

By what we construe as her second issue, Rachel argues the trial court erred by refusing to admit the non-parent authorization agreement for Harriet and William.

### A. Standard of Review

A trial court's ruling on evidentiary matters is also reviewed for an abuse of discretion. *In re Commitment of Dunsmore*, 562 S.W.3d 732, 739 (Tex. App.—Houston [1st Dist.] 2018, no pet.). If we find the trial court abused its discretion, we will not reverse

---

[10] We acknowledge that abuse and neglect records are confidential as a matter of law. *See* TEX. FAM. CODE ANN. § 261.201(a). However, a trial court may order disclosure under the appropriate circumstances. *See id.* § 261.201(b). Further, the Department is required to release the records of an investigation to an individual designated as a perpetrator. *See* 40 TEX. ADMIN. CODE ANN. § 700.203(c) (Tex. Dep't of Fam. & Prot. Servs., Access to Confidential Information Maintained by the Tex. Dep't of Fam. & Prot. Servs.). Finally, a person who is not otherwise entitled to records but participated in an investigation may have access to a portion of records pertaining to that individual. *See id.* § 700.203(e); *see also* TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, *Requesting My Case Records*, https://www.dfps.state.tx.us/policies/Case_Records/personally_involved.asp (last visited March 8, 2022).

17

the ruling unless "we also find that the trial court's error probably caused an improper judgment." *Id.* (citing TEX. R. APP. P. 44.1(a)(1)). In determining whether the error probably caused an improper judgment, we review the entire record and consider the role that the excluded evidence plays in the context of the hearing or trial. *Id.* (citing *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 551 (Tex. 2018); *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)).

**B.    Applicable Law**

Evidence must be relevant to be admissible. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. "Determining which facts are 'of consequence' to the action necessarily begins with a review of the pleadings." *In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding).

**C.    Analysis**

The authorization agreement, signed by Diane in 2014, gave Rachel certain rights to act on the children's behalf, such as consenting to medical treatment, enrolling them in school, and obtaining health insurance for the children. *See* TEX. FAM. CODE ANN. § 34.002(a) (setting out the acts that may be authorized through an authorization agreement). Rachel argued that the authorization agreement "establishe[d] certain rights and authority of [her] with respect to the children" which "shows an interest of [her]" in unsealing the adoption records.

Having concluded that Rachel lacked authority to attack the adoption, which was

the underlying purpose of offering the authorization agreement, we conclude that whether or not the authorization agreement was executed does not establish a fact of consequence. *See* TEX. R. EVID. 401; *In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d at 643. Because the authorization agreement would not establish a fact of consequence, it was not relevant and thus not admissible. *See* TEX. R. EVID. 401; *id.* R. 402. Moreover, the exclusion of the authorization agreement did not likely cause an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *In re Dunsmore*, 562 S.W.3d at 739. The trial court did not abuse its discretion by denying admission of the authorization agreement. *See id.* Rachel's second issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA<br>
Justice

Delivered and filed on the
10th day of March, 2022.